SUSANNA M. KOCSIS AND MARK S. KOCSIS, APPELLANTS, V. W.L. HARRISON, M.D., ET AL., APPELLEES.

543 N.W.2d 164

Filed February 9, 1996. No. S-94-078.

Thomas A. Gleason for appellants.

William M. Lamson, Jr., and William R. Settles, of Kennedy, Holland, DeLacy & Svoboda, for appellee Omaha Primary Care Associates, P.C.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

WHITE, C.J.

Appellants, Susanna M. and Mark S. Kocsis, brought an action for medical malpractice against appellees. In their petition, the Kocsises allege that appellees negligently diagnosed and treated Susanna Kocsis for a lump in her right breast. Dr. Dee R. Mattley, an employee of Omaha Primary Care Associates, P.C. (OPCA), was dismissed from the case for lack of personal jurisdiction. OPCA thereupon moved for summary judgment. The district court for Douglas County granted OPCA's motion for summary judgment, concluding that any further action against Dr. Mattley after his dismissal would be barred by the statute of limitations and that, therefore, no action could be maintained against his employer. The Kocsises appeal.

The Kocsises assign one error, that the district court, in granting OPCA's motion for summary judgment, erroneously applied the doctrine of respondeat superior by ruling that both master and servant must be parties to a suit. OPCA contends that even if the court misapplied the law of respondeat superior, the statute of limitations bars the Kocsises' action against OPCA as a matter of law.

We hold that the district court erred in granting OPCA's motion for summary judgment, and we reverse the order of the district court and remand for further proceedings.

The evidence presented in support of and opposing the motion for summary judgment is as follows: Dr. Mattley became Susanna Kocsis' primary care physician on June 3, 1988. In June 1988, Kocsis expressed concern to Dr. Mattley regarding her family's history of breast cancer. Dr. Mattley advised her to conduct monthly breast self-examinations.

On November 1, 1990, Kocsis consulted with Dr. Mattley concerning a lump in her right breast. Dr. Mattley reviewed a mammogram of Kocsis' breast that was conducted on January 2, 1990. Dr. Mattley advised Kocsis that her breast condition

was normal and needed no further treatment.

The affidavits submitted in support of and in opposition to OPCA's motion for summary judgment are in conflict as to when Dr. Mattley's treatment of Kocsis ceased. OPCA submitted the affidavit of Dr. Mattley, and Kocsis submitted her own affidavit in opposition to the motion.

Dr. Mattley states in his affidavit that all medical treatment and consultation regarding Kocsis' breast condition ceased on November 1, 1990, when he reviewed and discussed the January 1990 mammogram with Kocsis. However, the Kocsises' petition alleges that on November 15, Dr. Mattley referred her to Dr. William W. Jurgensen. Moreover, OPCA's answer, contrary to the affidavit of Dr. Mattley, admits that on November 15, Kocsis consulted with Dr. Mattley concerning her breast condition.

Kocsis states in her affidavit that Dr. Mattley personally treated her for her breast condition on November 15, December 3, and December 13, 1990.

The documents attached to Kocsis' affidavit indicate that Dr. Jurgensen wrote Dr. Mattley a letter dated December 12, 1990. The letter stated in pertinent part, "I have asked her to schedule a repeat mammogram for follow-up." Apparently in response to this letter, a handwritten note was made in Kocsis' medical records at Dr. Mattley's office that stated, "12-13-90. Mammogram 12-15-90 Breast mass per Dr. Jurgenson." However, in his affidavit, Dr. Mattley states that he did not read or evaluate the mammogram performed on December 15.

The Kocsises allege in their petition that "[o]n December 18, 1990 Defendant Jurgensen, at the request of Defendant Mattley, orally informed the Plaintiff Susanna M. Kocsis over the telephone that the repeat mammogram was negative and that no further treatment or evaluation was necessary." Also, in her affidavit, Kocsis states that she believes that at some point after December 15, 1990, Dr. Jurgenson informed Dr. Mattley of the mammogram results and that Dr. Mattley then requested Dr. Jurgenson to inform her of the results.

Kocsis also contends in her affidavit that Dr. Mattley remained her primary care physician for her breast condition at least through December 31, 1990.

In their petition, the Kocsises allege that they relied upon Dr. Mattley's and Dr. Jurgensen's opinions regarding Kocsis' breast condition until July 13, 1991. The petition also alleges that on August 23 a biopsy was performed, which revealed Kocsis' breast to be cancerous. The petition further alleges that Kocsis was required to undergo extensive surgical and medical treatment for her cancerous breast condition.

The Kocsises filed their petition on December 15, 1992. Concerning the negligence of Dr. Mattley, the Kocsises alleged that he was negligent, among other things, "[i]n failing to properly read and interpret the mammograms of January 2, 1990 and December 15, 1990" and "[i]n failing to inform and advise the Plaintiff of the percentage of false negative mammogram reports." OPCA was served with the summons and petition on June 15, 1993.

Dr. Mattley filed a special appearance pursuant to Neb. Rev. Stat. § 25-516.01 (Reissue 1989) for the sole purpose of objecting to the exercise of personal jurisdiction. At the hearing on the special appearance, the district court sustained the special appearance and dismissed Dr. Mattley from the suit for lack of personal jurisdiction.

Thereafter, OPCA moved for summary judgment. The district court granted OPCA's motion and held that an employer can only be liable under the doctrine of respondeat superior if the employee is liable. The court concluded that any claim against Dr. Mattley after his dismissal would be barred by the statute of limitations. The court therefore concluded that OPCA could not be liable under the doctrine of respondeat superior.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Western Sec. Bank v. United States F. & G. Co.*, 248 Neb. 679, 539 N.W.2d 15 (1995); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of

material fact exists. *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995); *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Healy, supra*. After a movant for summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Id.*

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Western Sec. Bank, supra*; *Healy, supra*.

The applicable statute of limitations is found in Neb. Rev. Stat. § 44-2828 (Reissue 1993) of the Nebraska Hospital–Medical Liability Act. Section 44-2828 reads in relevant part:

> [A]ny action to recover damages based on alleged malpractice or professional negligence or upon alleged breach of warranty in rendering or failing to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failing to render professional services providing the basis for such action . . . .

For purposes of determining whether an action is time barred, an action is commenced on the date the petition is filed. Neb. Rev. Stat. § 25-217 (Reissue 1989); *Licht v. Association Servs., Inc.*, 236 Neb. 616, 463 N.W.2d 566 (1990). However, "[t]he action shall stand dismissed without prejudice as to any defendant not served within six months from the date the petition was filed." § 25-217.

Based on the record, the district court was correct in finding that any action by the Kocsises against Dr. Mattley after his dismissal would be time barred by § 44-2828. A petition was filed on December 15, 1992, but the Kocsises' counsel failed to serve Dr. Mattley within the required 6–month time period. The

Kocsises have taken no further action against Dr. Mattley.

The Kocsises contend that the district court misapplied the doctrine of respondeat superior in this case. The Kocsises contend that if an employer is sued under the doctrine of respondeat superior before the statute of limitations has barred a claim against the employee, then the employee does not have to be joined as a party.

Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business. *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991); *Pullen v. Novak*, 169 Neb. 211, 99 N.W.2d 16 (1959). If an employee is not liable, the employer cannot be liable under the doctrine of respondeat superior. *Plock, supra*. The principal's liability is derived solely from that of its agent. *Id*. Nonetheless, it is also well established that a plaintiff is not required to join the employee when suing the employer under the doctrine of respondeat superior. See *Garbark v. Newman*, 155 Neb. 188, 51 N.W.2d 315 (1952). See, also, *Cheney v. Hailey*, 686 P.2d 808 (Colo. App. 1984); *Trans Union Leasing Corp. v. Hamilton*, 93 N.M. 310, 600 P.2d 256 (1979); *Vendrell v. School District No. 26C et al*, 226 Or. 263, 360 P.2d 282 (1961).

We hold that when a plaintiff initiates an action under the theory of respondeat superior against an employer before the statute of limitations has run as to the employee, the plaintiff need not sue both the employer and employee to prevent his action from being time barred. The controlling statute of limitations applicable to the employer is that which would apply to the employee. Therefore, if the action is brought within the limitations period that applies to the employee's tortious conduct, the action is not time barred as to the employer whose liability is solely vicarious.

One concern under the doctrine of respondeat superior is a result that finds the employer liable with no means of recourse against the person primarily liable—the employee. Our holding does not leave such a result. One who is held to be vicariously liable for the active negligence of another has a claim for indemnity from that person who is primarily liable. *Hiway 20*

*Terminal, Inc. v. Tri–County Agri–Supply, Inc.*, 232 Neb. 763, 443 N.W.2d 872 (1989). Under the doctrine of respondeat superior, an employer's liability is derivative rather than that of a joint tort–feasor. See *Dickey v. Meier*, 188 Neb. 420, 197 N.W.2d 385 (1972). For purposes of the statute of limitations, a claim for indemnity accrues not at the time of the underlying transaction, but, rather, at the time the indemnity claimant suffers loss or damage. *City of Wood River v. Geer–Melkus Constr. Co.*, 233 Neb. 179, 444 N.W.2d 305 (1989). Therefore, by bringing an action for indemnity, the employer will maintain a method of recourse against its negligent employee.

OPCA contends that even if Dr. Mattley does not have to be joined as a party in order for the Kocsises to maintain their action, the action against OPCA is nonetheless time barred as a matter of law. OPCA contends that the Kocsises did not commence their action within 2 years of the termination of Dr. Mattley's treatment of Kocsis' breast condition. The Kocsises contend that, in the very least, a question of material fact exists as to whether the action was brought within the statute of limitations time period.

"In medical malpractice cases, the period of limitations or repose begins to run when the treatment rendered after and relating to the allegedly wrongful act or omission is completed." *Healy v. Langdon*, 245 Neb. 1, 5, 511 N.W.2d 498, 501 (1994). The Kocsises filed their petition against OPCA on December 15, 1992. Therefore, Dr. Mattley's treatment for Kocsis' breast condition must have ceased prior to December 15, 1990, for the action to be time barred.

The record does not definitively establish the date on which Dr. Mattley's treatment of Kocsis' breast condition ceased. The parties' pleadings, affidavits, and documents accompanying the affidavits create a factual dispute as to whether Dr. Mattley consulted with Dr. Jurgensen concerning a December 15, 1990, mammogram and whether he requested Dr. Jurgensen to instruct Kocsis on the results of that mammogram. Dr. Mattley contends in his affidavit that he did not have any further involvement in the care and treatment of Kocsis' breast condition after November 1, 1990. However, Dr. Jurgensen wrote a letter on December 12 to Dr. Mattley indicating that Dr.

Jurgensen had ordered a follow–up mammogram for Kocsis. Also, Kocsis' medical records kept by Dr. Mattley reflect a December 13 notation stating that this mammogram was to be conducted on December 15.

Kocsis claims in both her petition and affidavit that she believes that Dr. Mattley consulted with Dr. Jurgenson on or after December 15, 1990, concerning the mammogram and that Dr. Mattley requested Dr. Jurgensen to inform Kocsis of their conclusion that the test was negative. Dr. Mattley presented no evidence refuting Kocsis' statements regarding what she believed took place on or after December 15.

Viewing the evidence in the light most favorable to the Kocsises, we find that a question of fact exists regarding whether Dr. Mattley read the mammogram of December 15, 1990, and regarding whether he made a diagnosis of Kocsis' breast condition from the results of that mammogram. The determination of whether the acts of alleged negligence occurred within the period of limitations is a task of the trier of fact and not a proper determination by the court on a motion for summary judgment.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GERRARD, J., not participating.