ANONYMOUS, APPELLANT AND CROSS-APPELLEE, V.
ST. JOHN LUTHERAN CHURCH OF SEWARD, NEBRASKA,
A NEBRASKA CORPORATION, ET AL., APPELLEES, AND
THE ESTATE OF DAVID MANNIGEL, DECEASED,
APPELLEE AND CROSS-APPELLANT.
703 N.W.2d 918

Filed September 27, 2005.    No. A-04-275.

Daniel H. Friedman and Herbert J. Friedman, of Friedman Law Offices, for appellant.

David A. Domina and Claudia Stringfield, of Domina Law, P.C., for appellees St. John Lutheran Church et al.

Randy L. Goyette and Christopher J. Walker, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee Estate of David Mannigel.

IRWIN, SIEVERS, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Anonymous filed suit against St. John Lutheran Church of Seward, Nebraska, a Nebraska corporation, and Gary Lewien and John Doe 1 through 2,300 (real names unknown), doing business as St. John Lutheran Congregation, an unincorporated religious association (collectively St. John); the Nebraska District of the Lutheran Church-Missouri Synod, a Nebraska corporation, and the Lutheran Church-Missouri Synod, a Missouri corporation (subsequently dismissed as parties); and the estate of David Mannigel, deceased (Estate of Mannigel), based upon allegations of sexual abuse perpetrated by Mannigel in the early 1970's when Anonymous was between the ages of 10 and 12. Finding that Anonymous' claims were barred by the statute of limitations, the district court granted summary judgment and dismissed the petition. We affirm.

## BACKGROUND

Anonymous filed a petition for damages on November 1, 2002, alleging that she had been a member of St. John and had attended St. John Lutheran School. The petition alleged that in 1971 and 1972, Mannigel sexually abused her on numerous occasions while in the course of his position as teacher and minister, that the abuse took place on school property, that the abuse continued until 2001, that the abuse was ongoing in nature and designed to intimidate and control, and that Mannigel began inquiring about Anonymous' children in 2001. Anonymous further alleged that St. John was or should have been placed on notice "at least ten years ago" that Mannigel was "sexually abusing [Anonymous] and other children on a routine and regular basis and refused to take steps to remove him from a position of power and refused to discharge him and report him to criminal

authorities." She set forth causes of action for intentional infliction of emotional distress, negligence, breach of fiduciary duty, breach of implied warranty, and misrepresentation, and she prayed for $750,000 and general damages, interest, and costs against each party on each cause of action.

The answer of the Estate of Mannigel and that of St. John alleged the petition was barred by the statute of limitations. On May 12, 2003, St. John filed a motion for summary judgment, claiming that because Anonymous' claims were barred by the statute of limitations, the movants were entitled to judgment as a matter of law. The Estate of Mannigel filed a similar motion for summary judgment on May 16.

The court held an evidentiary hearing on the motions and received various items of evidence. According to that evidence, Anonymous was born in 1961, graduated from high school at the top of her class, attended a year of college, married in 1984, and had given birth to a number of children.

Anonymous attended St. John Lutheran School from kindergarten through the ninth grade. Mannigel was a teacher at the school and a friend of Anonymous' family. In the classroom, Mannigel would put money in Anonymous' socks and "fly" her around the room by picking her up in her chair, raising her as high as he could, and carrying her about the room. Mannigel took Anonymous on two summer vacations and on numerous trips to the movies. Anonymous' first recollection of Mannigel's molesting her was in the summer before Anonymous entered the fifth grade. Anonymous stated that Mannigel abused her by having her sit on his lap, kissing her on the mouth, rubbing her vagina through her clothes, and having her rub his penis through his clothes. Although the molesting ceased after Anonymous completed the sixth grade, Mannigel continued to have contact with Anonymous until 2001. This contact included giving Anonymous money, sending her greeting cards, and visiting the house of Anonymous' parents at times when Anonymous was present. In the mid- to late 1980's, Anonymous worked at St. John Lutheran School for approximately 3 to 4 years, where Mannigel was her "boss."

When Anonymous was approximately 14 or 15 years old, she told her mother that she had been sexually abused by Mannigel.

In approximately 1983, Anonymous told a psychiatrist about the abuse, and she also told her husband-to-be before they married. Anonymous testified that in 1990, she told Paul Vasconcellos, a mental health practitioner and also a visiting pastor at St. John, of the abuse by Mannigel. At that time, Vasconcellos provided professional mental health care to Anonymous. Anonymous stated that Vasconcellos was silent when Anonymous revealed that Mannigel had abused her. She thought Vasconcellos had an obligation to report the abuse to the police, but Anonymous did not know if he did report the abuse.

Anonymous stated that she "frequently talked about [the abuse] to people that [she] trusted, such as friends, but [she] c[ould]n't give . . . exact dates and times." She stated that during her teenage years and throughout her entire life, she told people of the abuse. Anonymous sent a letter regarding the abuse to Mannigel in approximately 1998, and around that same time, she read the letter to her mother and to a friend. Anonymous stated that she "never forgot" the abuse, that the abuse had been alive and active in her mind all her life since the time it occurred, and that she "knew what [Mannigel] had done, but it wasn't until [she] saw [a psychiatrist] that he confirmed for [Anonymous] that everything that [Anonymous] had gone through in [her] life was because of that sexual abuse."

Anonymous stated that when Mannigel telephoned or sent her letters, "[i]t always sent [her] right back to [her] childhood." Dr. Mario Scalora, who conducted forensic interviews with Anonymous and performed psychological testing, stated in his evaluation that Anonymous "described a variety of factors that would explain a significant delay in reporting the alleged abuse": Mannigel maintained a significant relationship with Anonymous and Anonymous' family and maintained substantial influence over Anonymous, Anonymous experienced a longstanding pattern of traumatic symptoms since the 2-year period the sexualized contact took place, and Anonymous suffered estrangement from her mother as a result of the lack of maternal support when reporting the abuse to her mother. Scalora stated, "To summarize, the continued contact between [Anonymous] and the alleged abuser appeared to have had the effect of continuing old emotional wounds and preventing them from healing." In personality

testing, Scalora found "no evidence of thought disorder or difficulties of reality testing," but observed indications of "significant emotional problems." Scalora opined that Anonymous' "extensive continued contact with the abuser, her struggle with post-traumatic symptoms as well as limited familial and community support appeared to have made her immediately publicly re-disclosing the abuse and publicly confronting her abuser a formidable task." Scalora's evaluation concluded with the observation that "[t]he psychological effects of sexual abuse, particularly in cases of extended exploitation at the hands of an authority figure, may impair the victim's ability to immediately confront the abuser in a public manner (such as a legal proceeding)."

Paul Flack, a provisionally licensed mental health practitioner who had counseled with Anonymous over 20 times, opined that every contact Mannigel had with Anonymous "had the effect of essentially 'tearing the scab off of a wound' and lighting up and reaggravating the incidents when he actually sexually assaulted her." Flack further opined that Mannigel's contacts with Anonymous "aggravated the original abuse and amounted to a continuation of the trauma and control issues of the original abuse."

In her answers to St. John's requests for admissions, Anonymous admitted that for more than 10 years immediately before she filed the action, she had handled her own business affairs, provided maternal custodial care to her children, "[p]ro - vided decision-making and control with her husband over her health and the health of her children," sought and obtained medical and other professional services for herself and her children, voted when she chose to do so, and held appointed or volunteer positions in the church or community. Anonymous admitted that she had been mentally competent for more than 10 consecutive years before she filed the lawsuit. Although she had seen various psychiatrists and psychologists, Anonymous never had any restrictions placed on her activities for any medical or mental health reason, and she had never been an inpatient at a mental health facility. In an affidavit, however, Anonymous stated that she believed she was "mentally incapacitated and ill to a degree that [she] was unable to understand [her] legal rights, retain legal counsel, and institute legal action until at least after April, 2001."

In its February 12, 2004, journal entry, the district court found that Anonymous attained the age of majority in 1981, that she had 4 years from that time to bring suit upon those causes of action which accrued prior to the time she attained majority, that Anonymous was aware of the sexual abuse from the date she achieved her majority and at all times since that date, that Anonymous was aware Mannigel's conduct was wrong prior to and after 1981, that the statute of limitations had not been tolled as the result of any disability or mental disorder, that Nebraska had not adopted the " 'continuing wrong theory' " in emotional distress cases, and that the running of the statute of limitations could not be tolled by the allegations of a " 'continuing wrong.' " The court stated that even assuming the continuing wrong theory applied, the evidence did not present any question of fact. With regard to the claim of infliction of emotional distress based upon events occurring after November 1, 1998, the court stated that the evidence did not show that the conduct of Mannigel from that time was so " 'outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and [wa]s to be regarded as atrocious and utterly intolerable in a civilized community.' " The court stated that there was no genuine issue of fact with respect to Anonymous' claims of emotional abuse occurring after 1998. Therefore, the district court sustained the motions for summary judgment and dismissed the petition. Anonymous timely appeals.

## ASSIGNMENTS OF ERROR

Anonymous alleges that the trial court erred in granting the motions for summary judgment.

Upon cross-appeal, the Estate of Mannigel alleges that the district court erred in making a final determination of fact as to whether Mannigel committed the alleged acts of sexual abuse when such a determination of fact was unnecessary and improper in order to address the motions for summary judgment.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

*Sodoro, Daly v. Kramer*, 267 Neb. 970, 679 N.W.2d 213 (2004). Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

## ANALYSIS

*Statute of Limitations.*

Neb. Rev. Stat. § 25-207(3) (Reissue 1995) sets forth a 4-year statute of limitations for "an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated." Neb. Rev. Stat. § 25-213 (Reissue 1995) provides that

> if a person entitled to bring any action mentioned in this chapter . . . is, at the time the cause of action accrued, within the age of twenty years, a person with a mental disorder, or imprisoned, every such person shall be entitled to bring such action within the respective times limited by this chapter after such disability is removed.

The alleged abuse occurred in 1971 and 1972, when Anonymous was between the ages of 10 and 12. Because the alleged abuse occurred when Anonymous was "within the age of 20 years," see § 25-213, Anonymous had 4 years from the time she became 21 years of age to file suit. See *Brown v. Kindred*, 259 Neb. 95, 100, 608 N.W.2d 577, 580 (2000) (" 'within the age of 20 years' " means until one becomes 21 years old). Contrary to the district court's finding that Anonymous attained the age of majority in 1981, we observe that Anonymous turned 21 in 1982. However, this makes no difference in our analysis. The petition was not filed until November 1, 2002. A purpose of a statute of limitations is to prevent recovery on stale claims. *Hullinger v. Board of Regents*, 249 Neb. 868, 546 N.W.2d 779 (1996), *overruled on other grounds, Collins v. State*, 264 Neb. 267, 646 N.W.2d 618 (2002). The mischief which a statute of limitations is intended to remedy is general inconvenience resulting from delay in assertion of a legal right which it is practicable to assert. *Id.* The main purpose of a statute of limitations is to notify the defendant of a complaint against him or her within a reasonable amount of time so that the defendant is not

prejudiced by having an action filed against him or her long after the time he or she could have had to prepare a defense against a claim. *Id.* In this case, Anonymous did not file the petition until after the death of Mannigel.

Anonymous was aware of the abuse, and such awareness is evidenced by her numerous reports of the abuse to others. Anonymous told her mother of the alleged abuse when Anonymous was 14 or 15 years old. She told her husband about it prior to marriage and told a psychiatrist in approximately 1983. According to Anonymous, in 1990, she told Vasconcellos about the alleged abuse. In 1998, she wrote Mannigel concerning the alleged abuse and read the letter to her mother and a friend. Anonymous admitted that she had never been diagnosed with or treated for a mental illness that required inpatient hospitalization or for a repressed memory. She has been able to handle her own affairs and admitted to being mentally competent for more than 10 consecutive years before she filed the lawsuit. Although Anonymous argues that she suffered from a mental disorder that prevented her from instituting legal action, such assertion is unsupported by the evidence, even when viewed in the light most favorable to Anonymous.

*Continuing Tort Doctrine.*

Anonymous must show some reason why the action is not barred by the statute of limitations. She has not established that her discovery of the claim was delayed. Anonymous knew Mannigel's alleged molestation of her was wrong since at least the mid-1970's when she first told her mother that Mannigel had sexually abused her. Instead, Anonymous first argues that her claims are not barred by § 25-207, because Mannigel's conduct constituted a continuing tort that persisted through 2001.

Anonymous acknowledges that no Nebraska case law directly supports her attempt to apply the continuing tort doctrine in the case before us. She analogizes the instant case with those applying the concept in cases of medical negligence. In the context of a professional relationship, Nebraska law does recognize that a continuous relationship may toll the statute of limitations but requires that there be a continuity of the relationship and services for the same or a related subject matter after the alleged

professional negligence. See *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999). No Nebraska appellate court has applied this rule in a context similar to that in the case before us, and there was no evidence of a similar professional relationship as in *Reinke Mfg. Co.* between Anonymous and Mannigel during the years after Anonymous reached the age of majority.

Anonymous cites to the Idaho case of *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993), in support of her argument. We first observe that the issue in *Curtis* involved a very different factual context, concerning alleged physical and mental abuse in the relationship between an unmarried, adult couple over a 10-year period during which they resided together.

The *Curtis* court stated that by its nature, the tort of intentional infliction of emotional distress will often involve a series of acts over a period of time, rather than one single act causing severe emotional distress. According to *Curtis*, "continuing tort" has been defined as

> "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation."

123 Idaho at 603, 850 P.2d at 754, quoting 54 C.J.S. *Limitations of Actions* § 177 (1987).

A "continuing tort doctrine" is inapplicable in the case before us. The alleged sexual abuse ceased in 1972. Although a counselor explained that each time Mannigel corresponded with Anonymous it was like "tearing the scab off of a wound," Mannigel's contact with Anonymous after that point—such as sending Anonymous cards and money and seeing her at her parent's house—was not wrongful conduct in the legal sense and does not rise to the level needed to be actionable as an intentional infliction of emotional distress.

The *Curtis* court recognized that

> embracing th[e] concept [of continuing tort] in the area of intentional or negligent infliction of emotional distress does not throw open the doors to permit filing these actions at any time. The courts which have adopted this continuing tort theory have generally stated that the statute

of limitations is only held in abeyance until the tortious acts cease. . . . At that point the statute begins to run. If at some point after the statute has run the tortious acts begin again, a new cause of action may arise, but only as to those damages which have accrued since the new tortious conduct began.

(Citations omitted.) 123 Idaho at 604, 850 P.2d at 755. Anonymous attempts to define the continual ill effects of the original violations as continuing unlawful acts. Construing Mannigel's subsequent contacts as unlawful—and thus equating them with the earlier acts of sexual abuse—would throw open the doors to permit filing of such actions at any time. A chance encounter on a city street would be given the same legal effect as the despicable acts of sexual abuse which were alleged to have occurred during the 1970's. We decline to apply the continuing tort doctrine in such fashion.

*Mental Disorder.*

Anonymous also argues that § 25-213—which tolls the time for bringing an action if the claimant "is, at the time the cause of action accrued . . . a person with a mental disorder"—applies in the case before us.

In *Vergara v. Lopez-Vasquez*, 1 Neb. App. 1141, 510 N.W.2d 550 (1993), this court determined that the substitution of the phrase "a person with a mental disorder" for the word "insane" in § 25-213 did not change the legal standard involved. We found that a person with a mental disorder is one who suffers from a condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or from instituting legal action. *Vergara, supra.* A mental disorder within the meaning of § 25-213 is an incapacity which disqualifies one from acting for the protection of one's rights. *Vergara, supra.*

We recognize that, because we are reviewing a summary judgment granted against Anonymous, we must view the evidence in the light most favorable to her. Obviously, Anonymous' own statements cannot serve to establish that she suffers from a mental disorder; expert testimony is required. See, e.g., *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999) (mental suffering

and sense of helplessness are injuries subjective in nature and effect and must be established by expert medical testimony). Flack's affidavit opines that Anonymous "has been plagued by a variety of medical and physical ailments including post-traumatic stress disorder," but the affidavit fails to express any opinion concerning her ability to institute a legal action. Scalora's affidavit provides lengthy discussion of Anonymous' symptoms and complaints, but also fails to opine that Anonymous suffered from a mental disorder which actually prevented her from understanding her legal rights or from instituting legal action. At most, Scalora opines that "immediately publicly re-disclosing the abuse and publicly confronting her abuser [would be] a formidable task" and that the psychological effects of sexual abuse "may" impair the victim's ability to "immediately" confront the abuser in a public manner. Viewed in the light most favorable to Anonymous, this evidence does not establish an issue of fact concerning the existence of a mental disorder within the meaning of § 25-213.

■ Having rejected both of Anonymous' arguments, we find nothing that would toll the statute of limitations and no disputed issue of material fact regarding whether the claims are barred by the statute of limitations. Because we affirm the order of the district court, we need not consider the cross-appeal by the Estate of Mannigel. See *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

## CONCLUSION

We conclude that Anonymous' causes of action are barred by the statute of limitations and that any conduct within 4 years prior to the time Anonymous filed her petition did not rise to the level of being actionable as an intentional infliction of emotional distress. We therefore affirm the order of the district court granting summary judgment and dismissing the petition.

AFFIRMED.