IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PONEC V. GUY STREVEY & ASSOCS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMES F. PONEC ET AL., APPELLANTS,

V.

GUY STREVEY & ASSOCIATES, INC., ET AL., APPELLEES.

Filed February 7, 2017.    No. A-15-775.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Gail E. Boliver, of Boliver Law Firm, for appellants.

James M. Bausch and Jonathan J. Papik, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees Guy Strevey & Associates, Inc., and Guy Strevey.

Andrea D. Snowden, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee Hornor, Townsend & Kent, Inc.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

James F. Ponec and Ann Marie Ponec (the Ponecs) appeal from the orders of the district court for Douglas County which granted motions for summary judgment filed by Guy Strevey & Associates, Inc. and Guy Strevey, individually (collectively Strevey) and by Hornor, Townsend & Kent, Inc. (HTK), and which denied the Ponecs' motion for partial summary judgment against HTK. The court determined that the Ponecs' claims against both Strevey and HTK were barred by the applicable statute of limitations. Because we find no error in these determinations, we affirm.

- 1 -

## II. BACKGROUND

The Ponecs are a husband and wife living in Douglas County, Nebraska. They created the James F. Ponec and Ann Marie Ponec Trust and became trustees of the trust in 1996. Guy Strevey & Associates, Inc. is a Nebraska corporation. Guy Strevey owns and provides financial planning services though Guy Strevey & Associates. HTK is a broker-dealer, doing business in Nebraska, and is a member of the Financial Industry Regulatory Authority (FINRA). Strevey was affiliated with HTK as a registered representative from the early 1970s until late February 2008.

The Ponecs' relationship with Strevey began in the early 1990s, which is when the Ponecs allege that they began to switch their assets to mutual funds at Strevey's recommendation. Strevey denies making such a recommendation, claiming that he merely presented investment options to the Ponecs, who chose to invest in mutual funds. Eventually, the Ponecs began making oil and gas investments with two private companies. The Ponecs' lawsuit concerns these oil and gas investments and Strevey's alleged representations to them with respect to the value and performance of these investments. The Ponecs made their first investment in the two companies in August 1996 and their last in November 2003. In his deposition, James testified that he continued to have contact with Strevey after those last investments, speaking with Strevey once or twice a year to review the investments, but that Strevey was no longer investing any other money for the Ponecs at that point.

In March 2004, James sent a letter to the president of one of the companies, stating that the Ponecs were going to "pass" on an investment opportunity with the company because the Ponecs currently had "all of [their] savings invested in [the two companies]." James also wrote in the letter that the Ponecs "were quite pleased to get the larger checks for December and January" and that they "need big ones to help pay-off the loan and get some money into savings in case of an emergency." James testified in his deposition that he wrote this letter to inform the president that he needed dividends from the investments. James testified further that, at that time, he was concerned that what the Ponecs had been led to believe by Strevey might not be accurate.

In June 2005, the Ponecs received a letter from one of the companies indicating that a drilling project with which they had invested had not performed as expected. James made a notation on the letter, which he testified was an expression of his concern about this project that "was supposed to be so wonderful, and it turned out to be a flop."

James kept notes detailing his thoughts and concerns about the oil and gas investments. For example, a note from September 2006 stated that one of the companies would not "go public" for 5 to 10 years. James testified that his notes, with various dates in 2006, reflected his concerns that Strevey's representations about the companies might not be correct and that there might be a problem with the dividends being paid. James testified in his deposition that they initially received some dividends around 2000 but they did not receive monthly dividends or income every year as expected based on Strevey's representations in 1996. Neither the frequency nor the amount of the dividends met the Ponecs' expectations based on Strevey's statements.

On June 8, 2012, the Ponecs filed a complaint in the district court for negligence and breach of fiduciary duty against Strevey. They filed an amended complaint on August 2. In their amended complaint, the Ponecs alleged that in the early 1990s, they began to switch their assets to mutual

funds at Strevey's recommendation. They next alleged that in the mid-1990s, Strevey recommended they purchase an oil and gas investment in two private companies (CitiPower, LLC, later known as CitiEnergy, and Forexco). The Ponecs alleged that beginning in 1996, Strevey recommended they liquidate some of their mutual fund investments and place those funds in CitiEnergy and Forexco and that he continued to recommend purchases of the same oil and gas companies until by 2003, Strevey had recommended that nearly all of the Ponecs' investable funds be placed in these companies. The Ponecs alleged that Strevey told them these investments (1) would make them millionaires, (2) would pay great dividends, (3) would pay the Ponecs income every year for the rest of their lives, (4) were the best of the bunch, (4) should quadruple in stock value in 2 years. The Ponecs alleged that while their last investments in the two companies occurred in November 2003, Strevey continued to market these companies as suitable investments for the Ponecs although Strevey did not disclose to them that he had been discharged from his employment with a broker-dealer in 2008 for failure to follow company procedures for handling customer complaints and had given up his securities license. The Ponecs then set forth claims for negligence and breach of fiduciary duty and requested compensatory damages due to their losses and inability to liquidate their portfolio.

In his answer to the amended complaint, Strevey asserted, among other things, that the Ponecs' claims were barred by the applicable statute of limitations (SoL). On March 29, 2013, Strevey filed a motion for summary judgment, asserting the Ponecs' claims were barred by the 4-year SoL found in Neb. Rev. Stat. § 25-207 (Reissue 2016).

On May 10, 2013, prior to the hearing on Strevey's motion for summary judgment, the Ponecs filed a motion, seeking to amend their complaint to add HTK as a party and to add additional causes of action. We note that the Ponecs' motion to amend was not granted until February 21, 2014, after the hearing on Strevey's motion for summary judgment. In granting the motion to amend, the district court stated that it would consider Strevey's motion for summary judgment "against all of the issues with regard to [Strevey] as alleged in the Second Amended Complaint." With respect to Strevey, the second amended complaint added claims for fraudulent concealment, negligent misrepresentation, and fraudulent misrepresentation. We discuss the second amended complaint further below in connection with HTK's motion for summary judgment.

A hearing on Strevey's motion for summary judgment was held before the district court on May 13, 2013. The parties offered evidence, including depositions of the Ponecs and Strevey and notes taken by James about the Ponecs' investments. We have set forth the details of any necessary evidence, beyond that set forth above, in the analysis section below.

On February 21, 2014, the district court entered an order, granting Strevey's motion for summary judgment and dismissing all counts of the second amended complaint relating to Strevey. The court determined that the Ponecs' claims against Strevey were barred by the 4-year SoL in § 25-207, found no exception to toll the SoL, and, accordingly, granted Strevey's motion for summary judgment. The court found that the "continuing treatment" exception did not apply because there was not a "professional relationship" as a matter of law between Strevey and the Ponecs. The court also found that the discovery exception was unavailable to the Ponecs because they had inquiry notice of their potential claims by March 2004 when James wrote to the president

of one of the companies. The court observed that the Ponecs' own allegations in their complaint "prove that the discovery rule is not applicable," noting the Ponecs' allegations that Strevey told them the investments would yield income every year for the rest of their lives and that the company stock would quadruple in 2 years. The court stated, "It is undisputed that [the Ponecs] made their last investment in 2003, which, at the latest, means a person of ordinary intelligence and prudence would have discovered that these claims were false within a year or two of that date." The court stated further, "This is presumably why [James] kept notes about the investments and wrote the letter to the president of one of the companies." The court also stated that to the extent the Ponecs advanced a fraudulent concealment or equitable estoppel argument, such an argument was inapplicable because Strevey did not conceal that the investments were not yielding any returns. In making this determination, the court noted evidence that the Ponecs knew the investments were not yielding returns. Having found no exception to toll the SoL, the court found that the SoL barred the Ponecs' claims against Strevey, granted summary judgment in his favor, and dismissed the counts of the second amended complaint concerning Strevey.

With respect to HTK, in their second amended complaint, the Ponecs set forth claims for negligent supervision, respondeat superior, and fraudulent concealment. As with their claims against Strevey, the Ponecs' claims against HTK are associated with the investments recommended to them by Strevey between August 1996 and November 2003. They alleged that HTK breached its duty to supervise Strevey; that HTK was liable for Strevey's acts because he was an agent, servant, and/or employee of HTK acting within the scope of his authority; and that HTK failed to disclose and concealed the fact that Strevey had committed unauthorized sales of private placement securities to the Ponecs.

On March 13, 2015, the Ponecs filed a motion for partial summary judgment, alleging that there were no material facts in dispute as to the breach of HTK's duty to supervise Strevey.

On March 20, 2015, HTK filed a motion for summary judgment, arguing that the Ponecs' claims against it were time-barred.

A hearing was held on the Ponecs' and HTK's motions for summary judgment on July 20, 2015. The parties offered and the district court received evidence, including various affidavits and briefs, with attachments including depositions of Strevey and James, which we discuss as necessary in the analysis section below. At HTK's request, the court took judicial notice of HTK's answer to the Ponecs' operative complaint and the court's February 2014 order ruling on Strevey's motion for summary judgment.

On August 11, 2015, the district court entered an order denying the Ponecs' motion for partial summary judgment and granting summary judgment in favor of HTK. First, the court found the 4-year SoL in § 25-207 governed the Ponecs' claims against HTK, rejecting HTK's argument that the 3-year Securities Act of Nebraska SoL found in Neb. Rev. Stat. § 8-1118 (Cum. Supp. 2016) (no person may sue under this section more than 3 years after contract of sale or rendering of investment advice) was the applicable SoL. The court noted that the Securities Act is not the exclusive remedy under Nebraska law in cases involving the sale of securities. See *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986). The court determined that the Ponecs had pled their claims against HTK as common law causes of action, that the Securities Act did not prevent them from

doing so, and that, accordingly, the Ponecs' claims against HTK carried a 4-year SoL as found in § 25-207.

Next the district court found that the SoL in § 25-207 barred the Ponecs' claims against HTK for negligent supervision and fraudulent concealment. As with the Ponecs' claims against Strevey, the court found that neither the continuing treatment nor the discovery exception applied. The court determined that because the relationship between the Ponecs and HTK was not a professional relationship, as a matter of law, they could not take advantage of the "continuing treatment" exception to toll the SoL. In analyzing the discovery exception, the court noted the Ponecs' argument that they did not learn of potential negligent supervision or fraudulent concealment until the discovery of certain HTK documents during litigation. However, the court found that James had inquiry notice of the potential claims against HTK when he wrote the March 2004 letter, if not before. The court noted its previous determinations about the Ponecs' concerns with respect to Strevey's claims about their investments. The court then observed that Strevey worked for HTK and stated that once James had inquiry notice of Strevey's potential wrongdoing in March 2004, he had the facts necessary to pursue any potential claims of negligent supervision and fraudulent concealment against HTK. The court stated, "Just because [James] waited until litigation to further look into these potential claims, does not mean that he could not have discovered the claims earlier given what he knew. Had [James] pursued his suspicions, he would have discovered the facts leading to the causes of action the [Ponecs] now pursue." The court found that, as a matter of law, the discovery exception was also unavailable to the Ponecs and accordingly entered summary judgment in favor of HTK with respect to the claims of negligent supervision and fraudulent concealment.

Finally, the district court determined that the Ponecs' claim of respondeat superior against HTK was also time barred and granted summary judgment in favor of HTK on this claim. The court noted case law indicating that under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996). The court further observed that for respondeat superior claims, the applicable SoL is that which would apply to the employee and that if an action is brought within the limitations period applicable to the employee's tortious conduct, the action is not time barred as to the employer whose liability is solely vicarious. Because the court had previously found that the action was not brought within the limitations period applicable to Strevey's alleged tortious conduct, the Ponecs' respondeat superior claim was also time barred. The court also noted HTK's argument that Strevey was an independent contractor and not an employee, but the court found it unnecessary to make such a determination. The court found that even if the SoL did not bar the Ponecs' respondeat superior claim, Strevey's sale of unapproved securities to the Ponecs was not within the scope of his employment with HTK. We address the court's discussion of this issue as necessary in the analysis section below.

## III. ASSIGNMENTS OF ERROR

The Ponecs assert that the district court erred in (1) finding that the "continuing treatment doctrine" did not apply to a broker or broker-dealer who established a fiduciary relationship with

the Ponecs, (2) determining that "inquiry notice" alerted the Ponecs to a duty to investigate their fiduciary broker when dividends were insufficient, (3) applying a 4-year SoL when both Strevey and HTK omitted to advise the Ponecs of the truth about their portfolio status, (4) determining that Strevey's actions were "outside his scope of employment" and HTK could not be held liable contrary to the regulated industry's requirement that a broker dealer protect investors from the exact misconduct in which Strevey engaged, (5) granting the motions for summary judgment filed by Strevey and HTK, and (6) failing to grant the Ponecs' motion for partial summary judgment.

## IV. STANDARD OF REVIEW

The determination of which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Brodine v. Blue Cross Blue Shield of Nebraska*, 272 Neb. 713, 724 N.W.2d 321 (2006). The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016).

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Strode v. City of Ashland, supra*. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## V. ANALYSIS

### 1. APPLICABLE STATUTE OF LIMITATIONS

In ruling on Strevey's motion for summary judgment, the district court applied the 4-year SoL found in § 25-207, which requires that actions for trespass, conversion, other torts, and frauds be commenced within 4 years after accrual of the cause of action. A statute of limitations begins to run as soon as the claim accrues, and an action in tort accrues as soon as the act or omission occurs. *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007). The Ponecs filed their original complaint on June 8, 2012, well over 8 years after making their last investment in November 2003. Accordingly, the Ponecs' claims against Strevey are time barred unless some exception applies to excuse or toll the statute.

As they did before the district court, the Ponecs argue that both the continuing treatment or representation rule and the discovery rule apply to toll the running of the SoL on their claims. We discuss the applicability of these rules to the Ponecs' claims against Strevey below.

We note HTK's argument that the 3-year SoL found in § 8-1118 governs the Ponecs' failure to supervise claims. The district court rejected this argument finding that the Securities Act is not the exclusive remedy under Nebraska law in cases involving the sale of securities, that the Ponecs had pled their claims against HTK as common law causes of action, and that the Securities Act did not prevent them from doing so. (ST3). See *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986). We agree with this determination, but regardless of whether a 3-year or 4-year SoL is

applied, the Ponecs' claims against HTK are time barred and not saved by a tolling exception as discussed further below.

### 2. Continuing Treatment or Relationship

The Ponecs assert that the district court erred in finding that the "continuing treatment doctrine" did not apply to a broker or broker-dealer who established a fiduciary relationship with the Ponecs.

### (a) Applicable Law

The continuing treatment or relationship doctrine is applied in medical malpractice cases or other cases of professional negligence to toll the 2-year SoL found in Neb. Rev. Stat. § 25-222 (Reissue 2016) applicable to those types of actions. For example, "In medical malpractice actions, Nebraska has adopted the continuing treatment doctrine and has merged it with the occurrence rule. . . . For claims alleging medical malpractice, the period of limitations begins to run when the treatment relating to the allegedly wrongful act or omission is completed." (Citation omitted.) *Carruth v. State*, 271 Neb. 433, 438, 712 N.W.2d 575, 580 (2006). The continuing treatment doctrine is premised upon an ongoing and continuous relationship between physician and patient. *Hampton v. Shaw*, 14 Neb. App. 499, 710 N.W.2d 341 (2006).

A claim for professional negligence accrues and the statute of limitations begins to run at the time of the act or omission which is alleged to be the professional negligence that is the basis for the claim. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). In the context of a professional relationship, a continuous relationship may toll the statute of limitations but requires that there be a continuity of the relationship and services for the same or a related subject matter after the alleged professional negligence. *Anonymous v. St. John Lutheran Church*, 14 Neb. App. 42, 703 N.W.2d 918 (2005). Continuity does not mean mere continuity of the general professional relationship, and the continuous representation rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship. *Guinn v. Murray, supra*.

### (b) Strevey

In ruling on Strevey's motion for summary judgment, the district court determined that the Ponecs could not take advantage of the continuing relationship doctrine to toll the SoL on their claims against Strevey because the relationship between the Ponecs and Strevey was not a "professional relationship" as a matter of law.

In *Parks v. Merrill, Lynch, Pierce, Fenner*, 268 Neb. 499, 684 N.W.2d 543 (2004), an investor brought a breach of contract action against a securities investment firm. The Nebraska Supreme Court determined that the investor's action was not subject to the SoL for professional negligence because the employee of the firm who purchased bonds for the investor was not a professional within the meaning of § 25-222. In *Parks v. Merrill, Lynch, supra*, the Supreme Court noted that the definition of "profession" for purposes of the professional negligence statute of limitations under § 25-222 is (1) a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific,

historical, or scholarly principles underlying such skills and methods; (2) maintaining by force of organization or concerted opinion high standards of achievement and conduct, and (3) committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service. The Court observed, "In contrast to those occupations that are commonly recognized as professions, agents of broker-dealers in securities are not required to obtain a degree as a prerequisite to taking a licensing examination. 268 Neb. at 510, 684 N.W.2d at 552. The Court concluded that the securities investment firm employee in that case was not a professional because the evidence did not show he had obtained a securities license requiring an advanced education or significant experience in his field or that long and intensive training or preparation similar to a college degree was required to obtain the license held by the employee.

In this case, the Ponecs do not argue that § 25-222 is the applicable SoL; nor do they argue that Strevey was a professional within the meaning of that statute. They do argue, however, that the "continuing treatment doctrine" should be extended to financial advisors and broker-dealers who have created a fiduciary relationship. They argue that there was a continuity of the relationship between them because until mid-2012 Strevey was "continually reinforcing the value of the products he sold to [the] Ponecs and advising them of the product[s'] future success." Brief for appellants at 18. The continuing treatment doctrine has not been applied in Nebraska to cases other than those dealing with professional malpractice and the SoL in § 25-222. See, e.g., *Anonymous v. St. John Lutheran Church*, 14 Neb. App. 42, 703 N.W.2d 918 (2005) (continuing tort doctrine inapplicable to toll SoL in action arising out of alleged abuse by minister as no evidence of professional relationship). We decline to extend the doctrine as suggested by Ponecs.

Even if we were to extend the doctrine to financial advisors and broker-dealers who have created a fiduciary relationship, as urged by Ponecs, they have not shown that Strevey owed them a fiduciary duty. A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Gonzalez v. Union Pac. R.R. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011). Superiority of bargaining power alone does not create a fiduciary duty, because there must also be an opportunity to exercise undue influence. *Id.* The mere existence of a broker-client relationship, without more, does not imply a confidential relationship. *DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195, 476 N.W.2d 200 (1991) (court did not err in refusing to instruct jury on plaintiff investor's theory of fiduciary relationship with defendant securities broker where plaintiff was experienced businessman, who used independent judgment with respect to investments). In this case, James worked in the insurance industry for over 50 years, and although he testified in his deposition that he relied on "the professional advisor that [he] had faith in to guide [him] in the right direction" and made investments upon Strevey's recommendation, he agreed that he made the decision himself to invest in each individual product.

Even if the record showed a fiduciary relationship between the Ponecs and Strevey and this court decided to extend the continuing relationship doctrine beyond professional relationships and § 25-222, the rule would be inapplicable in this case. As noted above, the continuous representation rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). In granting summary judgment in favor of Strevey, the district court found that "even if the relationship

between the [Ponecs] and [Strevey] were deemed to be professional and continuing past June 8, 2008 (four years before Ponecs filed suit), the 'continuing treatment' exception would not apply after March 2004," which was when James wrote a letter to the president of one of the two oil and gas companies. In his deposition, James testified that when he wrote the letter he was starting to become concerned that Strevey's claims about these investments might not be accurate. The district court's decision with respect to the availability of the continuing relationship doctrine to toll the SoL found in § 25-207 with regard to the Ponecs' claims against Strevey was not clearly wrong.

### (c) HTK

In ruling on HTK's motion for summary judgment, the district court again found the continuous representation rule inapplicable because the relationship between the Ponecs and HTK was not a "professional relationship" as a matter of law. The Ponecs do not argue that HTK was a professional within meaning of § 25-222 or present any additional arguments with respect to HTK and the continuing relationship doctrine than those discussed above. Accordingly, we find no error in the district court's determination that the continuous representation rule was inapplicable to the Ponecs' claims against HTK. The district court's decision with respect to the availability of the continuing relationship doctrine to toll the SoL found in § 25-207 with respect to the Ponecs' claims against HTK was not clearly wrong.

### 3. DISCOVERY

The Ponecs assert that the district court erred in determining that "inquiry notice" alerted the Ponecs to a duty to investigate their fiduciary broker when dividends were insufficient. The Ponecs also assert that the district court erred in applying a 4-year SoL when both Strevey and HTK failed to advise the Ponecs the truth about their portfolio status. It is difficult to tell from the Ponecs' brief where and if this particular assignment of error is specifically argued, but presumably it relates to their arguments about fraudulent concealment and equitable estoppel in connection with the discovery tolling exception.

### (a) Applicable Law

In certain categories of cases, the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage. *Shlien v. Board of Regents*, 263 Neb. 465, 640 N.W.2d 643 (2002). In such cases, it is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury. *Id.* When the discovery rule is applicable, the statute of limitations does not begin to run until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury. *Id.* In those cases in which the discovery rule applies, the beneficence of the discovery rule is not bestowed on a potential plaintiff where the potential plaintiff in fact discovers, or in the exercise of reasonable diligence should have discovered, the injury within the initial period of limitations running from the wrongful act or omission. *Id.* In a case where the injury is not obvious and is neither discovered nor discoverable within the limitations period running from the wrongful act or omission, the statute of limitations

does not begin to run until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury. *Id.*

"Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed. *Id.* Discovery of an act or omission occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999).

(b) Analysis

The district court found that the discovery rule was unavailable to toll the SoL with respect to the Ponecs' claims against Strevey because they had inquiry notice in March 2004, when James wrote to the president of one of the companies, if not before. The court also found that the Ponecs' allegations in their complaint showed that the discovery rule was inapplicable given their allegations about Strevey's claims. The court determined that "a person of ordinary intelligence and prudence" would have discovered Strevey's claims about the investments were false within a year or two of 2003, the date the Ponecs made their last investments with the oil and gas companies in question. To the extent the Ponecs advanced a fraudulent concealment or equitable estoppel argument, the court found such an argument inapplicable. The court determined that there was no concealment because "[the Ponecs] knew that the investments were not yielding returns."

The Ponecs argue that the district court's analysis of the discovery rule was incomplete because the court "failed to address and consider the fiduciary relationship between a broker and broker-dealer and his customer/client." Brief for appellant at 18. They argue that they pled and proved a fiduciary relationship but do not point to any evidence in support of this argument, arguing only that they had a lower level of knowledge than the defendants.

The Ponecs cite *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002) for several propositions relating to equitable estoppel and fraudulent concealment. *Manker* provides that the doctrine of fraudulent concealment may estop a defendant from asserting a statute of limitations defense when the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering professional negligence. The equitable doctrine of estoppel may, in a proper case, be applied to prevent a fraudulent or inequitable resort to a statute of limitations, and a defendant may, by his or her representations, promises, or conduct, be so estopped where the other elements of estoppel are present. See *Id.*

To prove fraudulent concealment, a plaintiff must prove these elements: (1) The defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act or refrain from acting in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action

or inaction in response to the concealment. *Knights of Columbus Council 3152 v. KFS BD*, 280 Neb. 904, 791 N.W.2d 317 (2010).

The Ponecs argue that they thought their financial products were very valuable because after their last purchase in 2003, they continued to trust Strevey, the only person they knew with financial experience. They also argue that no financial statement from Strevey, HTK, or the two oil and gas companies ever advised them that the products were worthless. These broad assertions are contradicted by the evidence, which shows the Ponecs knew their investments were not yielding any returns and that they had significant concerns about their investments in 2004, if not sooner, and certainly well over 4 years prior to when they actually filed their initial complaint. The Ponecs also rely on evidence surrounding Strevey's discharge by HTK, but such evidence is not relevant given that the Ponecs were on inquiry notice long before Strevey's discharge. The district court did not err in concluding that the defendants did not conceal from the Ponecs the fact that the investments were not yielding any returns. The record does not show that Strevey and/or HTK, either by deception or by a violation of a duty, concealed from the Ponecs material facts which prevented them from discovering any negligence, professional or otherwise.

The district court's decision with respect to the availability of the discovery doctrine to toll the SoL found in § 25-207 with regard to the Ponecs' claims against both Strevey and HTK was not clearly wrong.

### 4. RESPONDEAT SUPERIOR CLAIM AGAINST HTK

The Ponecs assert that the district court erred in determining that Strevey's actions were "outside his scope of employment" and HTK could not be held liable contrary to the regulated industry's requirement that a broker dealer protect investors from the exact misconduct in which Strevey engaged.

Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business. *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016). When a plaintiff initiates an action under the theory of respondeat superior against an employer before the statute of limitations has run as to the employee, the plaintiff need not sue both the employer and employee to prevent his action from being time barred. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996). "The controlling statute of limitations applicable to the employer is that which would apply to the employee." 249 Neb. at 280, 543 N.W.2d at 169. If the action is brought within the limitations period that applies to the employee's tortious conduct, the action is not time barred as to the employer whose liability is solely vicarious. *Id.*

In its order granting HTK's motion for summary judgment, the district court determined that because the Ponecs' action was not brought within the SoL applicable to Strevey's alleged tortious conduct, their claim of respondeat superior was likewise time barred. The court went on, however, to determine that even if the SoL did not bar the Ponecs' respondeat superior claim, Strevey was not acting within the scope of his employment when he recommended unapproved securities to the Ponecs. It is this finding that the Ponecs address in their assignment of error with respect to the scope of Strevey's actions. However, we need not address the Ponecs' arguments in support of this assignment of error. An appellate court is not obligated to engage in an analysis

that is not necessary to adjudicate the case and controversy before it. *Adair Asset Management v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016). A determination of whether Strevey was an employee or whether his actions were within the scope of that employment are not necessary to our resolution of this appeal. Any liability on the part of HTK under a theory of respondeat superior would be vicarious, and we have already determined above that the court did not err in finding that the Ponecs' claims against Strevey were time barred. Accordingly, we need not consider this assignment of error further.

## 5. SUMMARY JUDGMENT

The Ponecs assert that the district court erred in granting the motions for summary judgment filed by Strevey and HTK and in failing to grant the Ponecs' motion for partial summary judgment.

As set forth above, the 4-year SoL set forth in § 25-207 is applicable to the Ponecs' claims against Strevey and HTK and the district court did not err in its determinations with respect to the running of that SoL or in finding no applicable tolling exception. Viewing the evidence in the light most favorable to the Ponecs and giving them the benefit of all reasonable inferences deducible from the evidence, summary judgment in favor of Strevey and HTK was properly granted.

## VI. CONCLUSION

The district court did not err in its determinations as to the running of the applicable SoL or in granting summary judgment in favor of Strevey and HTK and denying the Ponecs' motion for partial summary judgment.

AFFIRMED.