BRIAR WEST, INC., A CORPORATION, APPELLANT, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

291 N. W. 2d 730

Filed April 29, 1980. No. 42750.

Chauncey E. Barney of Barney & Carter, P.C., for appellant.

William F. Austin, City Attorney, and William G. Blake, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is an action for a declaratory judgment in which the plaintiff, Briar West, Inc., prayed for a declaration that in addition to other requirements made by the City of Lincoln as conditions for the approval of a subdivision, a developer of land may not also be required to pay the equivalent of one-half of the local street paving costs for the future widening and paving of arterial streets which abut the proposed subdivision. The District Court for Lancaster County, Nebraska, found that the imposition of such costs was within the scope of the city's authority and had a rational and reasonable nexus with the needs created by and the benefits conferred upon the subdivision and dismissed plaintiff's petition.

Plaintiff is the owner and developer of a proposed subdivision to the city of Lincoln, Nebraska, known as Briarhurst West Fourth Addition. This subdivision is located south of the city in the area northeast of the intersection of South 27th Street, a north-south street, and Old Cheney Road, which runs east and west.

On November 4, 1976, the plaintiff filed a preliminary plat for the subdivision. The planning commission approved the preliminary plat, and on February 7, 1977, the Lincoln city council approved it, both subject to the plaintiff's compliance with certain conditions. Those conditions required the plaintiff to furnish park and recreational equipment;

furnish water and sanitary sewers; furnish right-of-way, paving, and ornamental lighting for all interior streets in the subdivision; install sidewalks; and guarantee construction of a storm sewer system. These conditions involving the area within the subdivision are not in dispute and are not involved here.

Additional conditions were imposed with respect to South 27th Street and Old Cheney Road: (1) The plaintiff was required to dedicate, without compensation, a 17-foot-wide strip of land along both streets in order to provide for future street widening; (2) Plaintiff was required to relinquish the right of direct vehicular access from all lots abutting the two streets and to provide and permanently maintain a landscape screen as a physical barrier to access; and (3) Plaintiff was required to agree to pay "the equivalent cost of local street paving installation" for the future installation of widened paving on both of the streets. The costs of street paving were to be paid either by immediate cash payment of an amount based on current estimates, or by furnishing a bond to guarantee payment of the actual cost of such improvement when the improvement was actually made and completed.

The plaintiff has accepted and agreed to comply with conditions (1) and (2) and no issue is raised with respect to them in this appeal. This proceeding seeks to have condition (3) declared illegal and void.

Old Cheney Road and South 27th Street are presently two-lane section-line roads with a right-of-way 66 feet in width. Although they have both been paved by the county, they do not meet municipal street standards. The 1961 comprehensive regional plan shows both Old Cheney Road and South 27th Street as future major streets with two to four moving lanes. The 1977 comprehensive regional plan designates both streets as arterial streets. South 27th Street is shown as a two-lane arterial street and Old Cheney Road is shown as a four-lane arterial

street, with the improvement to municipal standards projected to take place in the period from 1981 to 1985. When they are improved, both streets are required by the Lincoln municipal code to have a right-of-way width of 100 feet.

A portion of the final plat of Briarhurst West Fourth Addition involving approximately 570 feet along Old Cheney Road received final approval on May 31, 1977. The estimated equivalent cost of local street paving for that portion of the plat was $17,000. The estimated equivalent cost of local street paving for the remaining 1,900 feet of frontage along both Old Cheney Road and South 27th Street was $60,500. By stipulation, plaintiff's obligation to pay the total amount of $77,500 was to await the result of this proceeding.

The District Court found that the requirement that developers pay the equivalent cost of local street paving installations for major streets which abut proposed subdivisions is within the scope of the city's authority and "bears a rational nexus to the needs created by, and the benefits conferred upon, the subdivision," and dismissed plaintiff's petition.

Plaintiff argues that subdivision controls imposed by municipalities must be authorized by statute or municipal code and must be reasonable as concerns the particular subdivision involved. More specifically, the plaintiff contends that there is no express or implied statutory authority granted to the city that authorizes the city, as part of the subdivision approval process, to require developers, in a case such as this, to make a contribution to the construction of the city's major street network beyond that justified by the ordinary concept of special benefit.

The rule has long been established in this state that a municipal corporation may exercise only such powers as are expressly granted, those necessarily or fairly implied in or incidental to powers expressly granted, and those essential to the declared objects

and purposes of a municipality. Statutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant. *Nelson-Johnston & Doudna v. Metropolitan Utilities District*, 137 Neb. 871, 291 N.W. 558 (1940).

The above rules are generally held to be applicable to subdivision controls. See *Hylton Enterprises v. Board of Supervisors,* 220 Va. 435, 258 S.E.2d 577 (1979). Furthermore, municipalities and reviewing authorities have no power to impose conditions on subdivisions which are not within the purview of their delegated authority or enabling legislation. 82 Am. Jur. 2d, *Zoning and Planning*, § 166 (1976).

The city argues that Neb. Rev. Stat. § 15-901 (Reissue 1977) grants to primary class cities broad police power authority to regulate the subdivision of land and to require developers to provide public improvements for land subdivisions. The city further argues that that broad police power is sufficient to permit the city to require a developer to pay the equivalent cost of providing local street paving for one-half the abutting portion of a major street to which direct access from all abutting lots in the proposed subdivision is completely denied.

Contrary to that assertion, even the city's own municipal subdivision ordinance does not authorize the city's action in this case. The requirement that the plaintiff pay the equivalent cost of local street paving installation for the abutting major streets, even though the plaintiff has also been required to relinquish the right to direct vehicular access to those same abutting major streets, has been made by the city pursuant to Lincoln, Neb., Code § 26.11.110 (1978), which provides:

> In addition to all other requirements of this title, the subdivider shall pay the cost of the installation of paving and street lighting on all local streets within the subdivision and

shall pay the equivalent cost of local street
paving installations for major or collector
street paving installations within or abutting
the subdivision.

The municipal code defines a "local street" at
§ 26.07.210 as "any public street that is used or in-
tended to be used for the principal purpose of serv-
ing as access to abutting property," and a "major
street" at § 26.07.190 as "a street, freeway, express-
way and arterial, as shown on the current major
street plan or highway plan . . . ."

The foundation for the requirement that the subdi-
vider pay the cost of the installation of paving on all
local streets is the fact that the street will serve as
access to the abutting property. Implicit in the re-
quirement that the subdivider also pay the equiva-
lent cost of local street paving installation for major
or collector street paving installations is the as-
sumption that the street will serve as access to the
abutting property. In a case such as this, where the
city has required that the subdivider relinquish the
right of direct vehicular access from all abutting
lots to the arterial street, the ordinance does not au-
thorize the additional requirement that the subdi-
vider also pay the equivalent cost of local street
paving installation for the abutting major street.

The city's action in this case is not authorized un-
der the provisions of § 15-901. Section 15-901 pro-
vides, in part:

No owner of any real estate located . . . with-
in any city of the primary class or within
three miles of the corporate limits . . . shall
be permitted to subdivide, plat or lay out
said real estate in building lots and streets
. . . without first having obtained the ap-
proval thereof by the city council of such
city . . . . Such a city shall have authority
within the area above described to regulate
the subdivision of land for the purpose,

whether immediate or future, of transfer of ownership or building development . . .; to prescribe standards for laying out subdivisions in harmony with the comprehensive plan; to require the installation of improvements by the owner or by the creation of public improvement districts, or by requiring a good and sufficient bond guaranteeing installation of such improvements; and to require the dedication of land for public purposes.

The city argues that § 15-901 authorizes it to indirectly assess property above and beyond the concept of special benefit that limits similar special assessments for public improvements. See Neb. Rev. Stat. §§ 15-701 through 759 (Reissue 1977) and related cases. Section 15-901 does grant broad police power to the cities of the primary class to assure proper meshing of subdivisions with the rest of the community. However, the section does not authorize the use of subdivision control as a device to evade constitutional limitations. Neb. Const. art. I, § 21, prohibits the taking of property for public use without just compensation. That prohibition is the basis of the restriction on special assessments. The only foundation for a local assessment lies in the special benefits conferred by the improvement upon the property assessed, and an assessment beyond the benefit so conferred is a taking of property for public use without compensation and, therefore, illegal. *Loup River Public Power District v. County of Platte*, 144 Neb. 600, 14 N.W.2d 210 (1944). Not only is this limitation inherent in the grant of authority by § 15-901, it is also evident in the very language of the grant itself. The only portion of the section which would arguably allow the city's action in this case is that portion which grants the city authority "to require the installation of improvements by the owner or by the creation of public improvement dis-

tricts, or by requiring a good and sufficient bond guaranteeing installation of such improvements . . . ." If the city had chosen to create public improvement districts to install the streets, any assessments would necessarily be limited by the special benefits conferred upon the property assessed. Such a limitation also applies to the alternative of requiring installation of improvements by the owner.

The city has not attempted in any way to link the required payment to special benefits conferred upon the subdivision by the future improvement of Old Cheney Road and South 27th Street. Nor is there any indication that any special benefits would, in fact, arise from such future improvement.

This court has held that the right of access is a property right and the Legislature cannot provide for its taking or damaging without just compensation. *Morehead v. State*, 195 Neb. 31, 236 N.W.2d 623 (1975). That holding does not prevent a city from reasonably limiting access to existing streets as a condition of approval of a subdivision, but it does point up the cumulative unreasonableness of the several requirements imposed here.

Even if there is legislative authority for the imposition of conditions, reasonableness is the essential requirement in determining what costs may be legally imposed as a condition of subdivision approval, and two general theories or rules of reasonableness have been adopted by courts. The city urges that we adopt the rule which authorizes, as a condition of subdivision approval, the imposition of those costs which have a rational and reasonable nexus with the needs created by and benefits conferred upon the subdivision. See *Land/Vest Props., Inc. v. Town of Plainfield*, 117 N.H. 817, 379 A.2d 200 (1977). The appellants urge adoption of the rule which permits, as a condition of subdivision approval, the imposition of only those costs which are specifically and uniquely attributable to the particu-

lar subdivision. See *McKain v. City Plan. Comm.*, 26 Ohio App. 2d 171, 270 N.E.2d 370 (1971).

It is unnecessary to make a choice between those rules here. No case has been cited under either rule in which a court has held it to be reasonable for a city to require a developer to relinquish all right of direct access to an arterial street from all abutting lots in the subdivision and, at the same time, pay the costs of future widening and paving of the street to which access has been restricted. The unreasonableness of such a requirement is accentuated in the present case by the fact that no time limit is specified for the widening and paving of the streets nor, indeed, is there any absolute requirement that it be done at all.

The action of the city in imposing the equivalent cost of local street paving installation in this case is not authorized under § 15-901 nor is it authorized by § 26.11.110. Declaratory judgment should have been entered declaring that the imposition of such future paving costs as a condition of approval of the plat of Briarhurst West Fourth Addition was not authorized by law and is illegal and void.

REVERSED AND REMANDED.

BRODKEY, J., participating on briefs.