HOME BUILDERS ASSOCIATION OF LINCOLN, A NEBRASKA
NOT-FOR-PROFIT CORPORATION, AND HARTLAND HOMES, INC.,
A NEBRASKA CORPORATION, APPELLANTS AND CROSS-APPELLEES,
V. THE CITY OF LINCOLN, A MUNICIPAL CORPORATION,
APPELLEE AND CROSS-APPELLANT.

711 N.W.2d 871

Filed April 7, 2006. No. S-04-782.

William G. Blake, Mark A. Hunzeker, and Jason L. Scott, of Pierson, Fitchett, Hunzeker, Blake & Katt, for appellants.

Dana W. Roper, Lincoln City Attorney, and Ernest R. Peo III for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The plaintiffs in this action have challenged the legal authority of the City of Lincoln (the City) to enact an ordinance conditioning the issuance of a building permit for new residential development on the payment of "impact fees," intended to offset the expenses associated with providing municipal services to the new development. For the reasons that follow, we conclude that the City's home rule charter permits it to impose such impact fees. Therefore, we affirm the judgment of the district court dismissing the plaintiffs' petition.

## BACKGROUND

In 2003, the City enacted an "Impact Fee Ordinance" (the Ordinance), providing that

> any person who applies for a building permit for a development or who applies for any other permit for a development where a building permit is not required, or who seeks to engage in a development for which no permit is required, shall pay a water system impact fee, water distribution impact fee, wastewater impact fee, arterial street impact fee, and neighborhood park and trail impact fee unless the type of development described in the permit or to be engaged in is specifically exempted, waived or subsidized by this ordinance, or unless the type of development described in the permit or to be engaged in is not located in an impact fee benefit district for the above-described impact fees.

Lincoln Mun. Code § 27.82.050 (2003). The Ordinance set forth the findings of the Lincoln City Council that new development in the City was creating additional demand for public facilities such as water treatment and wastewater systems, arterial streets, and neighborhood parks and trails. See Lincoln Mun. Code

§ 27.82.020 (2003). The city council further found that protection of the citizens of the City required expansion of new development for public facilities and that the City's revenue structure did not generate sufficient funds to serve the new development. See *id.* The city council found that "[t]he creation of an equitable impact fee system would enable the City to impose a more proportionate share of the costs of required improvements to the water and wastewater systems, arterial streets, and neighborhood parks and trails on those developments that create the need for them." § 27.82.020(f).

In the Ordinance's statement of intent, it was explained that the intent of the Ordinance was not to collect moneys from new development in excess of the actual amount necessary to offset demands generated by new development, or for moneys collected from the impact fee to be commingled with moneys from a different impact fee account, or to be used for a type of facility different from that for which the fee was paid. See Lincoln Mun. Code § 27.82.030 (2003). Rather,

> [t]he intent of this ordinance is to ensure that adequate water and wastewater systems, arterial streets, and parks and trails are available to serve new growth and development in the City of Lincoln and to regulate the use and development of land so as to ensure that new growth and development bears its proportionate share of the cost of improvements to the City's water and wastewater systems, arterial streets, and neighborhood parks and trails needed to serve such new growth and development; to ensure that the proportionate share for each type of public facility does not exceed the cost of providing that type of public facility to the new development that paid the fee; and to ensure that funds collected from new developments are actually used to construct pub[l]ic facilities that benefit such new developments.

*Id.*

The plaintiffs, the Home Builders Association of Lincoln and Hartland Homes, Inc., filed a complaint against the City in district court, seeking declaratory and injunctive relief declaring the Ordinance invalid and unenforceable. On cross-motions for summary judgment, the court concluded that the Ordinance was

within the power granted to the City and did not violate any constitutional provisions; thus, the court granted the City's motion for summary judgment.

The court first concluded that contrary to the City's argument, the Ordinance was not a regulatory measure; rather, relying on the city council's findings, the court concluded that the Ordinance was a tax intended to collect revenue for municipal purposes. The court found that the Ordinance was not an occupation tax, because payment of the impact fee is a condition precedent to obtaining a building permit. Thus, the City's imposition of the tax was not specifically authorized by the City's statutory power to collect occupation taxes.

However, the court concluded that under the City's home rule charter, it had the implicit authority to collect the impact fee. Relying on *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003), the court determined that the City's home rule charter was a limitation of powers charter, giving the City the power to take certain actions without explicit, authorizing language from the Legislature. Because the court found no express statutory limitation on the City's power to tax, the court found the City had the authority to enact and impose the Ordinance as a tax. The court rejected the plaintiffs' contentions that the Ordinance violated the Equal Protection Clauses of the federal and state Constitutions, or the uniformity requirements of the state Constitution.

## ASSIGNMENTS OF ERROR

The plaintiffs assign that the court erred (1) in finding that the City's home rule charter vested the City with the power to assess and collect taxes without authorization from the Legislature, (2) in failing to recognize that the home rule charter is subject to the state Constitution and that the constitution vests plenary power over taxation to the Legislature, (3) in finding that occupation taxes and excise taxes are in effect one and the same, and (4) in failing to find that the impact fees must be ruled to be license fees when analyzed under the authority conferred by the home rule charter.

The plaintiffs also assign that the court erred in finding that the dissimilar taxation of persons and properties similarly situated is

lawful under the constitution. While some discussion of this issue appears in the plaintiffs' reply brief, no argument in support of this assignment of error is found in their appellants' brief. Thus, we do not consider it. See, *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003); *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001). The plaintiffs also argue that the constitution requires the City to pay the impact fee revenues to the county for the benefit of school districts, but this was not assigned as error. Similarly, we do not consider this argument. See *Demerath v. Knights of Columbus*, 268 Neb. 132, 680 N.W.2d 200 (2004).

On cross-appeal, the City assigns that the court erred in finding that the Ordinance was the enactment of a tax rather than an exaction, regulatory fee, or service charge and that, even if the impact fee is a tax, the court erred in concluding that the impact fee was not a valid occupation tax.

## STANDARD OF REVIEW

■ This appeal presents questions of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *City of Columbus v. Swanson*, 270 Neb. 713, 708 N.W.2d 225 (2005).

## ANALYSIS

The plaintiffs' first two assignments of error address the dispositive conclusion of the district court that pursuant to its home rule charter, the City had the legal authority to enact the Ordinance in the absence of express statutory authorization to that effect. The plaintiffs argue that this understanding of the home rule charter is incorrect and that in matters of taxation, the City can act only pursuant to an express grant of authority from the Legislature.

■ As noted by the district court, our most recent discussion of the City's authority under its home rule charter was *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003), in which the issue was whether the City had the legal authority to provide for-hire telecommunications services. We noted the distinction between a legislative charter, which emanates from the sovereign legislature and grants power to a municipality, and a home rule charter, which has as its basis

a constitutional provision enacted by the sovereign people authorizing the electorate to empower municipalities with the authority to govern their own affairs. See *id.*

The purpose of a home rule charter "is to render the city as nearly independent as possible from state interference." *Id.* at 81, 655 N.W.2d at 372-73. Pursuant to the language of the Nebraska Constitution authorizing home rule charters, Neb. Const. art. XI,

> "the city may by its charter under the Constitution provide for the exercise by the council of every power connected with the proper and efficient government of the municipality, including those powers so connected, which might lawfully be delegated to it by the legislature, without waiting for such delegation. It may provide for the exercise of power on subjects, connected with municipal concerns, which are also proper for state legislation, but upon which the state has not spoken, *until* it speaks."

(Emphasis in original.) *In re Application of Lincoln Electric System*, 265 Neb. at 82, 655 N.W.2d at 373, quoting *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, 189 N.W. 643 (1922). We further noted the distinction between a home rule charter that operates as a grant of powers, which expresses the specifically enumerated functions of the municipality and is strictly construed, and a limitation of powers charter, which empowers a municipality to exercise every power connected with the proper and efficient government of the municipality which might be lawfully delegated to it by the Legislature, without waiting for such delegation. See *id.*

After examining the City's 1992 home rule charter, the pertinent language of which is unchanged, we concluded that the City's home rule charter is a limitation of powers charter. See *In re Application of Lincoln Electric System, supra.* Thus, we concluded that the relevant question in that appeal, which we answered in the affirmative, was whether the City's broad authorization to engage in municipal powers and functions encompassed the provision of for-hire telecommunications services. See *id.*

The scope of that broad municipal authority is again before us in this case. The plaintiffs do not take issue with the district

court's conclusion that the Ordinance was connected with the proper and efficient government of the City, within the meaning of its limitation of powers charter. Rather, the plaintiffs contend that with respect to the specific matter of taxation, the broad authority afforded a municipality under a limitation of powers charter nonetheless requires the express delegation by the Legislature of the power to tax.

The plaintiffs first turn to *Briar West, Inc. v. City of Lincoln*, 206 Neb. 172, 291 N.W.2d 730 (1980), in which we reversed the district court's determination that the City was authorized to impose the costs of paving arterial streets on the developer of a proposed subdivision. We stated that a municipal corporation could exercise only such powers as were expressly granted to it, or fairly implied in or incidental to powers expressly granted, and those essential to the declared objects and purposes of a municipality. *Id.* We further stated that "[s]tatutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant." *Id.* at 176, 291 N.W.2d at 732. We found no authority for the imposition of paving costs in the Nebraska statutes, or even in the City's ordinances. See *id.*

However, our decision in *Briar West, Inc.*, was made in the context of a substantially different legal framework. As explained by *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003), the City did not adopt a limitation of powers home rule charter until 1992. Our decision in *Briar West, Inc.*, *supra*, as noted above, rested on a rule of strict construction of a municipality's express powers, also known as Dillon's rule. In 1980, when *Briar West, Inc.* was decided, that was the applicable law. But Dillon's rule does not apply to a city operating under a limitation of powers charter such as that adopted by the City in 1992. See *In re Application of Lincoln Electric System, supra.* Unlike the City's home rule charter at the time *Briar West, Inc.*, *supra*, was decided, the City's current home rule charter does not merely enumerate specified powers, but grants all powers possible to the City. Consequently, our decision in *Briar West, Inc.* does not apply to the City's current home rule charter.

The plaintiffs also contend that in matters of taxation, express delegation of authority to a municipality is required. The

plaintiffs rely on Neb. Const. art. VIII, § 1, which provides in part that "[t]he necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct." Similarly, the plaintiffs direct us to Neb. Const. art. VIII, § 6, which provides that "[t]he Legislature may vest" municipal corporations with the power to make assessments for local improvements, and that municipal corporations "may be vested" with authority to assess and collect taxes. The plaintiffs argue that these constitutional provisions reserve the Legislature's "plenary power" over taxation to the Legislature in the absence of express delegation.

 It is well established that under a home rule charter, a city's power must be consistent with and subject to the constitution and laws of this state, except as to local matters of strictly municipal concern. See *Dell v. City of Lincoln*, 170 Neb. 176, 102 N.W.2d 62 (1960). See, also, *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982). But the plaintiffs are incorrect in contending that the City's assertion of authority to enact the Ordinance is inconsistent with the Nebraska Constitution. The question here is not whether the Legislature could assert its plenary power over taxation to preclude the City from imposing impact fees—rather, the question is whether, in the absence of an express provision, the City may exercise that power. The constitutional limitation that a home rule charter must be consistent with and subject to the laws of the state simply means that on matters of such general concern to the people of the state as to involve a public need or policy, the charter must yield to state legislation. *State, ex rel. Fischer, v. City of Lincoln*, 137 Neb. 97, 288 N.W. 499 (1939). But until the superior authority of the state has been asserted by a general statutory enactment, the municipality may properly act under its charter. *Id.*

 The constitutional language relied upon by the plaintiffs does not act as a restriction of the authority a municipality may exercise under a home rule charter. Had this purpose been intended, it could have been expressed in article XI in no uncertain terms. Instead, when read together, article VIII, §§ 1 and 6, and article XI support the City's position in this case. The very purpose of a home rule charter is to permit municipalities to

exercise " 'every power connected with the proper and efficient government of the municipality, including those powers so connected, which might lawfully be delegated to it by the legislature, without waiting for such delegation.' " *In re Application of Lincoln Electric System*, 265 Neb. 70, 82, 655 N.W.2d 363, 373 (2003), quoting *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, 189 N.W. 643 (1922). Article VIII, §§ 1 and 6, simply establishes the Legislature's power to tax, and its authority to delegate that power to governmental subdivisions. In short, article VIII, §§ 1 and 6, provides that the Legislature can empower a city to tax, and article XI authorizes a city with a limitation of powers home rule charter to exercise that power to tax without first waiting for express delegation.

■ A constitution represents the supreme written will of the people regarding the framework for their government. *Pony Lake Sch. Dist. v. State Committee for Reorg., ante* p. 173, 710 N.W.2d 609 (2006). As we stated in *In re Application of Lincoln Electric System, supra*, a home rule charter is just another method of empowering a municipality to govern its own affairs, in which the sovereign people authorize the electorate to empower municipalities with the authority to govern their own affairs. The plaintiffs' reading of the constitution would frustrate the will of the sovereign people in that regard, as it would limit the sovereignty acquired by the adoption of a home rule charter, and contravene the intent of article XI.

The plaintiffs also rely on cases in which this court has referred to the Legislature's "plenary power" over taxation, and required municipalities to rely on an express grant of the power to tax. See, e.g., *Consumers Public Power Dist. v. City of Lincoln*, 168 Neb. 183, 95 N.W.2d 357 (1959). But the plaintiffs do not identify, nor has our research revealed, any case in which we have concluded that a municipality governed by a limitation of powers charter was nonetheless without the power to tax in the absence of express delegation from the Legislature. It would be utterly inconsistent with the nature of a limitation of powers home rule charter, and the presumptions associated with such a charter, to conclude that a municipality operating under a limitation of powers charter was still dependent on express authority from the Legislature for the exercise of municipal powers.

## CONCLUSION

We conclude that the district court correctly determined that the City was empowered, under its home rule charter, to enact the Ordinance. Having so determined, we need not address the plaintiffs' remaining assignments of error, as they would have been relevant only if express statutory authority for the Ordinance was required. Similarly, we decline to address the City's cross-appeal, as the issues it presents are unnecessary to our disposition of this appeal. The judgment of the district court is affirmed.

AFFIRMED.

HENDRY, C.J., not participating.

CONNOLLY, J., not participating in the decision.