**CITY OF LINCOLN, NEBRASKA,**
Plaintiff,

v.

**WINDSTREAM NEBRASKA,
INC., Defendant.**

No. 4:10CV3030.

United States District Court,
D. Nebraska.

July 25, 2011.

Rodney M. Confer, Jocelyn W. Golden, Steven J. Huggenberger, City Attorney's Office, Lincoln, NE, for Plaintiff.

Erin L. Ebeler, Krista L. Kester, Paul M. Schudel, Edward H. Tricker, Woods, Aitken Law Firm, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

RICHARD G. KOPF, District Judge.

The plaintiff, City of Lincoln, Nebraska ("City"), commenced this action on January 13, 2010, in the District Court of Lancaster County, Nebraska, to collect occupation taxes from the defendant, Windstream Nebraska, Inc. ("Windstream"). The action was removed to this court on February 12, 2010, based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332 and 1446(a). The City claims that Windstream and its predecessor, Alltel Nebraska, Inc., underreported their gross receipts and underpaid occupation taxes since January 1, 2001.

The parties have filed cross-motions for partial summary judgment.[1] Their motions include two common issues: (1) whether a statute of limitations precludes the City from collecting unpaid occupation taxes that accrued prior to August 1, 2005;[2] and (2) the date from which

---

1. Windstream has filed a separate motion requesting oral argument on its motion for partial summary judgment. The request will be denied.

2. Prior to this litigation, the City and Windstream entered into a tolling agreement for any applicable limitations period effective during the term of that agreement, beginning on August 1, 2009. Windstream contends that a 4-year limitations period applies.

the City is entitled to collect compound interest on unpaid occupation taxes.[3] Windstream also argues that only "telecommunications service," as defined by the Nebraska Telecommunications Regulation Act, Neb.Rev.Stat. § 86–121 ("the offering of telecommunications for a fee"), is subject to being assessed occupation tax by the City, and it seeks determinations that (1) to the extent the City's ordinances in effect prior to October 1, 2010, assessed occupation tax on items other than telecommunications service, the ordinances are unenforceable and violate Neb.Rev.Stat. §§ 86–704, 15–202, and 15–203, and (2) certain provisions must be stricken from the City's current tax ordinances, which became effective on October 1, 2010, because their provisions exceed the scope of the City's power to regulate telecommunication companies and assess occupation tax.

For the reasons discussed below, (1) on issue of the statute of limitations, I will grant in part Windstream's motion and deny the City's motion, (2) on the issue of compound interest, I will grant in part the City's motion and deny Windstream's motion, and (3) on the remaining issues raised by Windstream, I will deny its motion.

## DISCUSSION

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652–53 (8th Cir.1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir.1999). The moving party bears the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986.)

### 1. Statute of Limitations

Windstream maintains that the applicable statute of limitations is Neb.Rev.Stat. § 25–206, which provides, in part, that "an action upon a liability created by statute, other than a forfeiture or penalty, can only be brought within four years." Windstream argues that the City's occupation tax is "a liability created by statute" within the meaning of section 25–206 because Neb.Rev.Stat. § 86–704(4)(a)(i) provides that "[a] municipality shall not levy a tax, fee, or charge for any right or privilege of engaging in a telecommunications business ... other than ... [a]n occupation tax authorized under section 14–109, 15–202, 15–203, 16–205, or 17–525 [.]" Sections 15–202 and 15–203 apply to a city of the primary class, such as the City of Lincoln, and authorize the municipality "to levy an occupation tax on public service property or corporations in such amounts as may be proper and necessary," Neb.Rev.Stat. § 15–202, and "to raise revenue by levying and collecting a license or occupation tax on any person, partnership, limited liability company, corporation, or business within the limits of the city and regulate the same

---

**3.** On July 19, 2010, the City passed an ordinance amending provisions of the occupation tax. The parties disagree about the effective date of the provision for compound interest.

by ordinance[.]" Neb.Rev.Stat. § 15–203. The City counters that the occupation tax was created by ordinance, not by statute, and contends that the ordinance was enacted pursuant to authority granted by the City's home rule charter, not by statute.

In *Millard Rural Fire Protection Dist. No. 1 v. City of Omaha,* 226 Neb. 50, 409 N.W.2d 574 (1987), a fire protection district brought an action against the City of Omaha for a determination of the rights, duties, and responsibilities of the district and the city with respect to areas annexed by the city between 1968 and 1984. The district court found that Neb.Rev.Stat. §§ 25–206, 25–207, and 25–212 were applicable and each barred any claim of the district arising prior to 1980. The Nebraska Supreme Court affirmed, stating:

> Section 25–206 provides: "An action upon a contract, not in writing, expressed or implied, *or an action upon a liability created by statute,* other than a forfeiture or penalty, can only be brought within four years." (Emphasis supplied.) Section 25–207 provides in part: "The following actions can only be brought within four years: ... (3) an action for the injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated...."[4] Section

25–212[5] provides: "An action for relief not hereinbefore provided for can only be brought within four years after the cause of action shall have accrued." No matter which of the above sections is applied to an action commenced under § 31–766,[6] the action must be commenced within 4 years after the effective date of the annexation ordinance. The present action was commenced by the district on February 10, 1984. Therefore, all the district's annexation claims arising prior to February 10, 1980, were barred. The district court did not err in so determining.

409 N.W.2d at 578–79.

So, too, in the present case, if the City's occupation tax is not considered "a liability created by statute" within the meaning of section 25–206, the action is still subject to the general 4–year statute of limitations contained in sections 25–207(3) and 25–212. The City, however, claims immunity from any statute of limitations enacted by the Nebraska Legislature. It offers two reasons.

First, the City claims that it is not time-limited when suing to collect unpaid occupation taxes because it operates under a home rule charter.[7] It states that neither

---

**4.** Section 25–207(3) has been applied to actions for an accounting, for example. *See American Driver Serv. v. Truck Ins. Exch.,* 10 Neb.App. 318, 631 N.W.2d 140 (2001;) *Jones v. Johnson,* 207 Neb. 706, 300 N.W.2d 816, 817 (1981) (also applying § 25–212).

**5.** Non-substantive amendments were made to the language of section 25–212 by 2011 Nebraska Laws, L.B.9.

**6.** Neb.Rev.Stat. § 31–766 provides in part: "If the district and city or village do not agree upon the proper adjustment of all matters growing out of the annexation of a part of the territory located within the district, the district ... may apply to the district court ... for an adjustment of all matters growing out of or in any way connected with the annex-

ation of such territory, and after a hearing thereon the court may enter an order or decree fixing the rights, duties, and obligations of the parties."

**7.** "As a city of the primary class, Neb.Rev. Stat. § 15–101 (Reissue 1997), the city of Lincoln has authority to enact ordinances 'not inconsistent with the general laws of the state,' Neb.Rev.Stat. § 15–263 (Reissue 1997). The Nebraska Constitution also permits a city having a population of more than 5,000 inhabitants to 'frame a charter for its own government, consistent with and subject to the constitution and laws of this state.' Neb. Const. art. XI, § 2. Pursuant to Neb. Const. art. XI, § 5, the city of Lincoln adopted its charter as the home rule charter for the city.

the charter nor the Lincoln Municipal Code impose a limitations period.

■ "It is well established that under a home rule charter, a city's power must be consistent with and subject to the constitution and laws of this state, except as to local matters of strictly municipal concern." *Home Builders Ass'n of Lincoln v. City of Lincoln*, 271 Neb. 353, 711 N.W.2d 871, 877 (2006). "The constitutional limitation that a home rule charter must be consistent with and subject to the laws of the state simply means that on matters of such general concern to the people of the state as to involve a public need or policy, the charter must yield to state legislation. But until the superior authority of the state has been asserted by a general statutory enactment, the municipality may properly act under its charter." *Id.* at 878 (citations omitted).

The City contends that the occupation tax is a matter of strictly local concern, while Windstream takes the position that it clearly involves a matter of statewide concern because it relates to telecommunications service that is regulated by the state. Both parties' arguments miss the mark. The issue here is not the City's taxing authority or the state's regulation of telecommunications companies; rather, the relevant issue is the City's ability to bring suit on stale claims.

In *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990), municipal employees brought an action against the City of Omaha seeking to recover unpaid overtime wages. The city defended against the action by asserting it was barred by claims statutes, applicable to cities of the metropolitan class, which required the employees to file claims with the city comptroller within 18 months. The Nebraska Supreme Court affirmed the dismissal of the action on this basis even though the city operated under a home rule charter. It stated:

In arguing that the claims statutes do not apply in this case, the employees contend that Omaha is a home rule charter city, and wage claims against Omaha are solely of local concern. We have decided in this regard that "when the Legislature enacts a law affecting municipal affairs which is of state-wide concern, the state law takes precedence over any municipal action taken under the home rule charter." *Omaha Parking Authority v. City of Omaha*, 163 Neb. 97, 104, 77 N.W.2d 862, 868 (1956). The claims statutes affect access to the state courts and the state law remedies. These are issues of statewide concern. Consequently, Omaha's home rule charter does not affect the applicability of the claims statutes to wage claims against the city.

*Id.* at 541.

■ Neb.Rev.Stat. §§ 25–206, 25–207(3), and 25–212 likewise affect access to the state courts and the state law remedies. "A purpose of a statute of limitations is to prevent recovery on stale claims. The mischief which a statute of limitations is intended to remedy is general inconvenience resulting from delay in assertion of a legal right which it is practicable to assert." *Anonymous v. St. John Lutheran Church of Seward*, 14 Neb.App. 42, 703 N.W.2d 918, 925 (2005) (citations omitted). One or more of these statutes of limitations will apply to the present action regardless of whether the City's occupa-

The purpose of a home rule charter is to render the city as nearly independent as possible from state interference. *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003)." *In re Genevieve C.*, 13 Neb.App. 665, 698 N.W.2d 462, 465 (2005.)

tion tax on telecommunications service is a matter of strictly local concern or is a matter of statewide concern.

Second, the City argues that it has immunity from the statutes of limitations because it acted in a governmental capacity when imposing the occupation tax. This argument does not find any support under Nebraska law.

■ "The maxim *nullum tempus occurrit regi* [lapse of time does not bar the right of the crown] only applies in favor of the sovereign power, and has no application to municipal corporations deriving their powers from the sovereign, although their powers, in a limited sense, are governmental. Thus the statute [of limitations] runs for or against towns and cities in the same manner as it does for or against individuals." *May v. School Dist. No. 22,* 22 Neb. 205, 34 N.W. 377 (1887.) *See also Chaffee v. City of Omaha,* 145 Neb. 418, 16 N.W.2d 852, 854 (1944) ("As a general rule, statutes of limitations run in favor of, as well as against, municipalities."); *In re Ernst's Guardianship,* 158 Neb. 15, 62 N.W.2d 110, 111 (1954) ("[I]mmunity from a general statute of limitation is accorded only to the sovereign power, the state, and does not extend to subdivisions of the state unless the Legislature specifically so provides.").

■ I therefore find that a 4–year limitations period, as provided by Neb.Rev. Stat. §§ 25–206, 25–207(3), or 25–212, applies to this action. Windstream asserts that "[a]ny claim by the City that relates to amounts the City claims were underreported by [Windstream] on any monthly statement due and owing prior August 1, 2005, are subject to the statute of limitations." (Filing 72 at 9.) It also states that "[g]iven the payment and reporting structure established by the City, the first claim that could have accrued on or after August 1, 2005, would be for occupation taxes re-

lating to July 2005. Therefore, any amounts claimed by the City that relate to months prior to July 2005 are barred as a matter of law." (Filing 72 at 11.) The City does not refute these statements, except to note that it "intends to offer, if necessary, [arguments .and evidence] regarding issues of deception and concealment by Windstream's employees regarding information requested by City, and City's detrimental reliance on assurances given by Defendant's employees." (Filing 77 at 14.)

### 2. *Compound Interest*

In its motion for partial summary judgment, Windstream requests a ruling that "[t]he City's claim for compound interest on amounts that accrued prior to October 1, 2010, is without merit and should be dismissed." (Filing 71.) Windstream argues in its supporting brief that "it was only after this litigation had been filed that the City amended its ordinances to allow for interest on past due amounts to be compounded on a quarterly basis. *Lincoln Municipal Code* § 3.24.090. Further, that change only became effective as of October 1, 2010." (Filing 72 at 12.)

In its motion for partial summary judgment, the City requests a ruling that it "is entitled to compound interest and penalties on telecommunication occupation taxes as of August 3, 2010 and after that date." (Filing 75.) The City argues:

City concedes that Nebraska case law is clear that it is not entitled to compound interest if not otherwise provided by statute or contract. *Priest v. Priest,* 251 Neb. 76, 82, 554 N.W.2d 792, 797 (1996). Lincoln Municipal Code did not allow for compound interest on unpaid telecommunication occupation tax payments until the enactment of Ordinance No. 19410 on July 19, 2010, which

amended L.M.C. § 3.24.090 as follows: "All deferred payments shall draw interest at the rate of one percent *(1%)* per month *and shall be compounded quarterly.* After default for six months, a penalty of five percent *(5%)* shall be added in addition to the interest charges." (Ex. 6 [filing 76–6], p. 5)

Under Article V, Section 2 of the City's Charter, "[a]ll ordinances, except as hereinabove prescribed, shall take effect fifteen days after passage." (Ex. 4 [filing 76–4], p. 4; Ex. 2 [filing 76–2], ¶ 7) Therefore, as amended, L.M.C. § 3.24.090 became effective on August 3, 2010, fifteen days after its passage by City Council. (Ex. 2 [filing 76–2], ¶ 9) Compound interest is therefore imposed by City on deferred telecommunication occupation taxes after August 3, 2010. Windstream is mistaken in its claim that the compound interest has an effective date of October 1, 2010 (p. 12 of Windstream's brief); October 1, 2010 is actually only the effective date of the amendment to L.M.C. § 3.24.080 in Ordinance No. 19410 on telecommunication occupation tax. (Ex. 6 [filing 76–6], p. 1, "Commencing ~~January~~ October 1, 2010, there is hereby levied....") The Court should rule as a matter of law that City is not entitled to compound interest on telecommunication occupation taxes prior to August 3, 2010, but that City is entitled to compound interest and penalties as of August 3, 2010 and after that date.

(Filing 77 at 15.)

Windstream concedes in its reply brief that the effective date of the compound interest provision is not October 1, 2010, but it argues the effective date actually is August 6, 2010, because the City did not publish the ordinance until July 30, 2010. Article V, Section 2 of the City's Charter states that "ordinances fixing a penalty of forfeiture for the violation thereof shall not take effect until fifteen days after passage, and in no case before one week after the publication thereof in the manner above prescribed," absent an emergency. (Filing 76–4 at 4.)

The City, in its reply brief, "recognizes that the parties are quarreling over a matter of three days of compound interest," but states that it "does believe the date on which compound interest applies is a matter that the Court can definitively decide on summary judgment." (Filing 86 at 8.) Later in the same brief, however, the City urges that "[a]s a matter of law, the Court should conclude that City is entitled under L.M.C. § 3.24.090, as amended, to assess compound interest on telecommunication occupation taxes as of and after August 3, 2010." (Filing 86 at 10.)

■ "Forfeiture" has been defined by the Nebraska Supreme Court as "a penalty by which one loses his rights and interest in property." *Arthur v. Trindel,* 168 Neb. 429, 96 N.W.2d 208, 215 (1959). It is evident that the City's collection of compound interest does not result in the imposition of a "penalty of forfeiture." The effective date of the compound interest provision therefore was August 3, 2010.

Windstream appears to take the position that compound interest cannot be charged on any taxes that became due prior to the effective date of the ordinance amendment, while the City appears to claim that it can charge compound interest on the total amount of taxes owing from and after that date. The parties, however, have not discussed this apparent dispute in their briefs, nor have they cited any legal authority in support of their respective positions. As a result, at this time I will only decide the question of the ordinance's effective date; if there is a dispute regarding the computation of compound interest, the issue can be taken up at the time of trial.

### 3. Occupation Tax

Finally, Windstream contends that "as a matter of law, only revenue sources directly attributable to 'telecommunications service' as defined by the Nebraska Revised Statutes are subject to being assessed occupation tax by the City." (Filing 72 at 12.) In particular, Windstream objects to the City assessing occupation tax on revenue derived from equipment sales, installation, and maintenance.

Pointing to definitions found in the Communications Act of 1934, 47 U.S.C. § 153, and the Nebraska Telecommunications Regulation Act, Windstream insists that "telecommunications service" is a standard industry term which does not include equipment. To the extent that defining "telecommunications service" is material to the City's claim for unpaid occupation taxes,[8] I find there is a genuine dispute as to the meaning of such term.[9]

Windstream next notes that the Nebraska Telecommunications Regulation Act ("NTRA") "preempt[s] and prohibit[s] any regulation of a telecommunications company by counties, cities, villages, townships, or any other local governmental entity." Neb.Rev.Stat. § 86–123(3). As previously discussed, another statute provides that "[a] municipality shall not levy a tax, fee, or charge for any right or privilege of engaging in a telecommunications business ... other than ... [a]n occupation tax" as authorized by law. Neb.Rev.Stat. § 86–704(4)(a)(i). Municipal occupation taxes must be "uniform in respect to the class upon which they are imposed," Neb.Rev. Stat. §§ 15–202, 15–203, and, in the case of telecommunications businesses, "competitively neutral." Neb.Rev.Stat. § 86–704(4)(b). The NTRA provides that "[w]henever any municipality or any other local governmental entity imposes upon a telecommunications company any tax or fee as described in section 86–704, such tax or fee shall, insofar as practicable, be billed pro rata to the telecommunications company's customers receiving telecommunications service within the territorial limits of such municipality or other local governmental entity." Neb.Rev.Stat. § 86–157. The Act defines "telecommunications company" to mean "any person, firm, partnership, limited liability company, corporation, association, or governmental entity offering telecommunications service in Nebraska intrastate commerce." Neb.Rev. Stat. § 86–119. The term "telecommunications business," as used in section 86–704 (which is not part of the NTRA), is not defined in statute.

Windstream infers from the foregoing statutory provisions that "the entities allowed to be assessed the occupation tax are ones that *provide telecommunications service* and the customers who are supposed to be the final payors of the occupation tax are those whom *receive telecommunications service* within the municipality that assessed the tax. Any further regulation of a telecommunications company by counties, cities, villages, townships, or any other local gov-

---

8. The City's ordinances do not use the term "telecommunications service." The ordinances instead refer to "telecommunication services." *See* Addendum to this Memorandum and Order (discussing Lincoln Municipal Code § 3.24.080).

9. In an effort to resolve this matter expeditiously, I have elected not to discuss my findings in detail. *See Civil Justice Delay and Expense Reduction Plan,* ¶ 12 (U.S.Dist.Ct., D.Neb., Nov. 1993) ("When motions for summary judgment are considered by a district judge and are denied on the ground that a genuine issue of material fact exists for trial, the court will issue a short opinion so stating, rather than a lengthy opinion canvassing the materials on file in support of or opposition to the motion.").

ernmental entity is prohibited and preempted by the NTRA. Thus, as a matter of law, this Court should conclude that the only items to which telecommunication occupation tax is allowed to be assessed by the City of Lincoln are to those items that are properly classified as telecommunications service under the Nebraska statutes." (Filing 72 at 20 (emphasis in original).)

 "It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute." *State ex rel. Douglas v. Herrington,* 206 Neb. 516, 294 N.W.2d 330, 334 (1980). Windstream is asking me to read limitations into the statutes that do not exist.

██ In fact, section 86–704(4)(a) was amended during the most recent legislative session to provide that "[b]eginning January 1, 2013, ... [t]he occupation tax shall be imposed only on the receipts from the sale of telecommunications service as defined in subdivision (7)(aa) of section 77–2703.04[.]"[10] 2011 Nebraska Laws, L.B. 165. Until such date, I find no statutory prohibition against a municipality assessing occupation tax on revenue that a telecommunications company earns from the sale, installation, or maintenance of equipment, for example. It is generally presumed that the Nebraska Legislature, in adopting an amendment, intended to make some change in the existing law. *See Underhill v. Hobelman,* 279 Neb. 30, 776 N.W.2d 786, 788 (2009.)

A separate question is whether the City of Lincoln's occupation tax actually extends to such items. However, this question is beyond the scope of Windstream's motion. Windstream deemed it "premature to reference specific line items of the City's deficiency assessment in the motion for summary judgment.[11] Rather, the

---

**10.** Neb.Rev.Stat. Neb.Rev.St. § 77–2703.04(7)(aa) provides:

Telecommunications service means the electronic transmission, conveyance, or routing of voice, data, audio, video, or any other information or signals to a point, or between or among points. Telecommunications service includes such transmission, conveyance, or routing in which computer processing applications are used to act on the form, code, or protocol of the content for purposes of transmission, conveyance, or routing without regard to whether such service is referred to as voice over Internet protocol services or is classified by the Federal Communications Commission as enhanced or value-added. Telecommunications service does not include:
 (i) Data processing and information services that allow data to be generated, acquired, stored, processed, or retrieved and delivered by an electronic transmission to a purchaser when such purchaser's primary purpose for the underlying transaction is the processed data or information;
 (ii) Installation or maintenance of wiring or equipment on a customer's premises;
 (iii) Tangible personal property;
 (iv) Advertising, including, but not limited to, directory advertising;
 (v) Billing and collection services provided to third parties;
 (vi) Internet access service;
 (vii) Radio and television audio and video programming services, regardless of the medium, including the furnishing of transmission, conveyance, and routing of such services by the programming service provider. Radio and television audio and video programming services shall include, but not be limited to, cable service as defined in 47 U.S.C. 522, as such section existed on January 1, 2007, and audio and video programming services delivered by providers of commercial mobile radio service as defined in 47 C.F.R. 20.3, as such regulation existed on January 1, 2007;
 (viii) Ancillary services; or
 (ix) Digital products delivered electronically, including, but not limited to, software, music, video, reading materials, or ring tones[.]

**11.** The City states that "Windstream also ignores in its brief some of the other categories for which it has not paid occupation taxes,

purpose of [Windstream's] summary judgment motion on this point is to request judgment as a matter of law that only revenue sources directly attributable to "telecommunications service" as defined by the Nebraska Revised Statutes are subject to being assessed occupation tax by the City." (Filing 79 at 12.) Windstream's request is denied.

## CONCLUSION

A 4–year limitations period, as provided by Neb.Rev.Stat. §§ 25–206, 25–207(3), or 25–212, applies to this action, and bars any claims that accrued prior to August 1, 2005. The effective date of the amendment to Section 3.24.090 of the Lincoln Municipal Code was August 3, 2010. Before that date the City could not collect compound interest. In levying occupation tax against Windstream, the City is *not* limited to assessing a percentage of Windstream's gross receipts that are directly attributable to "telecommunications service" as defined by the Nebraska Revised Statutes. The meaning of the Section 3.24.080 of the Lincoln Municipal Code, including the meaning of the term "telecommunication services" as used in such section prior to October 1, 2010, will be determined at trial.

IT IS ORDERED:

1. Windstream's motion for partial summary judgment (filing 71) is granted in part and denied in part, as follows:

 a. The motion is granted to the extent that the court finds a 4–year limitations period, as provided by Neb.Rev.Stat. §§ 25–206, 25–207(3), or 25–212, applies to this action.

 b. In all other respects, the motion is denied.

2. Windstream's motion for oral argument (filing 81) is denied.

3. The City's motion for partial summary judgment (filing 75) is granted in part and denied in part, as follows:

 a. The motion is granted to the extent that the court finds the effective date of the amendment to Section 3.24.090 of the Lincoln Municipal Code, as enacted by Ordinance No. 19410, was August 3, 2010.

 b. In all other respects, the motion is denied.

## ADDENDUM

Prior to being amended by Ordinance No. 19269, which was passed by the City on August 24, 2009, Section 3.24.080 of the Lincoln Municipal Code provided:

Commencing September 1, 2001, there is hereby levied upon every person, firm, partnership, corporation, or association engaged in the business of offering or providing telecommunication services to the public for hire in the City of Lincoln an occupation tax as follows:

(a) Five and one-half percent (5.50%) [12] on the gross receipts result-

---

such as incorrectly exempted customers, intrastate private lines, and service connection charges." (Filing 77 at 16.)

**12.** Prior to September 1, 2001, the tax rate was 3.8%. See Ordinance No. 16424 (filing 80–3), which was passed on July 19, 1993. Ordinance No. 16424 also repealed a provision of Section 3.24.080 which taxed "the gross receipts resulting from the lease or rental of telecommunications equipment to an end user of such equipment, including any telephone, switch, or other telecommunication termination device used to provide telecommunications for hire in the city." In all other respects the language of Section 3.24.080 was the same as set forth above.

Prior to November 1, 1992, however, the language of Section 3.24.080 was substantially different. The City previously "levied upon every company which maintains and operates

ing from any toll services and charges on basic local exchange services; interexchange services; mobile services; and other telecommunication services as follows:

(1) Basic local exchange services shall include the access and transmission of two-way switched communications within the city, including local telephone and telecommunication services;

(2) Inter-exchange services shall mean the access and transmission of communications between two or more local exchange areas, provided that such inter-exchange service either (a) originates from an end user within the city or (b) terminates with an end user within the city, and is charged to a service address within the city regardless of where the charges are actually paid;

(3) Mobile services shall include any radio or similar communication services provided pursuant to license or authority granted by the Federal Communications Commission, charged to a service address within the city regardless of where the charges are actually paid, including cellular, radio paging, and mobile radio services; and

(4) Any other similar telecommunication services involving any electronic or electromagnetic transmission of messages originating and terminating in the State of Nebraska and charged to a service address in the City of Lincoln, regardless of where the charges are actually paid.

(b) Gross receipts shall not include any toll services and charges as follows:

(1) For interstate telecommunications between persons in this city and persons outside of this state;

(2) For local carrier access charges, transmission facilities and switching services provided to telecommunications companies;

(3) From accounts charged to the United States government or any of its departments, or the State of Nebraska, or any of its agencies, subdivisions, or departments.

No part or portion of the tax provided for in this chapter shall be levied upon or assessed against or taken from any such gross receipts so excepted from the provisions hereof.

(Filing 73–2.) The tax rate was increased to 6% effective January 1, 2010. *See* Ordinance No. 19269 (filing 73–3).

Amendments adopted by Ordinance No. 19410 (filing 73–4), which as passed on July 19, 2010, provide, among other things, that "telecommunication services and charges" and "sale[s] of telecommunication equipment" are subject to the occupation tax. The terms "telecommunication services" and "telecommunication equipment"

plants and systems in the City of Lincoln for the purpose of providing any telephone service an occupation tax ... [of] Three and eight-tenths percent (3.8%) on the gross receipts resulting from rentals and tolls of the business, including the rental charges resulting from business in the City of Lincoln and all toll services and charges resulting from toll service from persons within this city to persons within this state, excluding all toll service between persons in this city and persons outside of this state, and all toll service interstate, and all interstate business and all toll service or rental charges on account of the United States government service or any of its departments, or state service or any of its departments, and no part or portion of the tax provided for in this chapter shall be levied upon or assessed against or taken from any such business so excepted from the provisions hereof." *See* Ordinance No. 16191 (filing 80–2), which was passed on August 24, 1992.

are also defined. Thus, Section 3.24.080 now reads:

Commencing October 1, 2010, there is hereby levied upon every person, firm, partnership, corporation, or association engaged in the business of offering, providing or selling telecommunication equipment or telecommunication services to the public for hire in the City of Lincoln an occupation tax of six percent (6%) on (1) the gross receipts resulting from any telecommunication services and charges to a customer for which telecommunication services are provided; and (2) the gross receipts resulting from any sale of telecommunication equipment.

(a) Telecommunication services as used in this ordinance is defined as the provision of all communication services and equipment provided in connection therewith, operable by the general public as opposed to the employees of a telecommunications business only, using electromagnetic wire, fiber optics or radio waves to control or direct the sending and receiving of messages at a distance, and includes transmission, conveyance, or routing of voice, data, audio, video, or any other information or signals to any geographic location, or between or among geographic locations, and any transmission, conveyance, or routing in which computer processing applications are used to act on the form, code, or protocol of the content for purposes of transmission, conveyance, or routing, without regard to whether such service is referred to as voice over internet protocol services or is classified by the federal communications commission as enhanced or value added;

(b) Telecommunication equipment as used in this ordinance is defined as any communication device sold for the purpose of providing or as part of a telecommunication service as defined in subsection (a) of this section, including but not limited to, phones, mobile phones, cellular phones, smart phones, pagers, and all like devices. Telecommunications equipment shall not include computers, routers, hubs, lamp and key systems or private branch exchanges.

(c) Telecommunication services which are subject to this occupation tax includes but shall not be limited to:

(1) Basic local exchange services as defined in Neb.Rev.Stat. § 86–105;

(2) Inter-exchange services as defined in Neb. Rev. Stat. § 86–111, provided that such inter-exchange service either (a) originates from an end user within the city or (b) terminates with an end user within the city, and is charged to a service address within the city regardless of where the charges are actually paid;

(3) Commercial mobile services as defined in 47 U.S.C. § 332(d)(1) which include any radio or similar communication services provided pursuant to license or authority granted by the Federal Communications Commission, charged to a service address within the city regardless of where the charges are actually paid, including cellular, radio paging, and mobile radio services;

(4) Any other similar telecommunication services involving any electronic or electromagnetic transmission of messages or any other communications originating and terminating in the State of Nebraska and charged to a service address in the City of Lincoln, re-

gardless of where the charges are actually paid;

(5) Any other telecommunication services that are a necessary component of the services provided, regardless of whether the services or fees are required by federal, state or local authorities or provided by the telecommunication business including, but not limited to, installation, maintenance, any premise services, service connections, late payment fees, and equipment leasing;

(6) Ancillary services and charges that are associated with or incidental to the provision of telecommunication services including, but not limited to conference bridging, detailed telecommunications billing, directory assistance, vertical service, or voice mail services; and

(7) Telephone cards, phone cards, calling cards, rechargeable cards, telephone tokens and any other method or device used in purchasing prepaid minutes, prepaid telecommunication service, or pay-as-you-go services.

(d) Gross receipts shall not include any services and charges as follows:

(1) For interstate telecommunications between persons in this city and persons outside of this state;

(2) For local carrier access charges, transmission facilities and switching services provided to telecommunications companies;

(3) From accounts charged to the United States government or any of its departments, or the State of Ne-braska, or any of its agencies, subdivisions, or departments[;]

(4) Any cable television services regulated under Chapter 5.15 of the Lincoln Municipal Code[;]

(5) Any charges or services prohibited from being taxed by the Internet Tax Freedom Act[; and]

(6) Any sales taxes imposed by the State of Nebraska pursuant to Neb. Rev.Stat. § 77–2703.

(e) The seller of telecommunication services or equipment may itemize, as an add-on charge, the tax levied on a bill, receipt, or other invoice to the purchaser, but each seller engaged in selling telecommunication services or equipment shall remain liable for the tax imposed by this section.[13]

No part or portion of the tax provided for in this chapter shall be levied upon or assessed against or taken from any such gross receipts so excepted from the provisions hereof.

(Filing 73–6.)

---

**13.** This provision was added by Ordinance No. 19454, which was passed on September 27, 2010. (Filing 76–7.)